Rodney **WINFIELD,** Plaintiff–Appellee,

v.

**G.L. BASS; Kelvin Carlyle; Anthony Clatterbuck; James Hicks; Galvin Sizemore; Ronald Williams, or Walter Williams; Donald Wilmouth, Lieutenant, Defendants–Appellants,**

and

**Unknown Prison Guards, Defendants (Two Cases).**

Nos. 94–7346, 95–6422.

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1995.

Decided Oct. 25, 1995.

**530**

**ARGUED:** Pamela Anne Sargent, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellants. Sa'ad El–Amin, El–Amin & Crawford, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** James S. Gilmore, III, Attorney General of Virginia, Lance B. Leggitt, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellants. Beverly D. Crawford, El–Amin & Crawford, P.C., Richmond, Virginia, for Appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

Dismissed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Chief Judge ERVIN and Judge MURNAGHAN joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

This is an action brought under 42 U.S.C. § 1983 by Rodney Winfield, a Virginia state prison inmate, against the warden and several correctional officers for physical injuries inflicted upon him by a fellow-inmate allegedly because of the deliberate indifference of the officers to his known plight. The district court denied the officers' motion for summary judgment that was based both on the defense of qualified immunity and on the merits of the claim. The officers timely noticed an interlocutory appeal of right from the order and the district court later certified for interlocutory appeal under 28 U.S.C. § 1292(b) so much of the order as did not relate to the qualified immunity defense. We dismiss the appeal from denial of the qualified immunity claim on the authority of *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and we dismiss the appeal from denial of the motion to dismiss on the merits as having been improvidently permitted by this court.

### I

On the evening of February 3, 1993, Winfield was physically assaulted and injured by a fellow-inmate, T. Gibson, who stabbed him

repeatedly with a metal "shank" in Winfield's prison cell in the Greensville Correctional Center in Jarrett, Virginia. Winfield then brought this action under 42 U.S.C. § 1983 against G.L. Bass, Warden of the facility, and correctional officers, Kelvin Carlyle, Anthony Clatterbuck, James Hicks, Galvin Sizemore, Ronald (or Walter) Williams, Donald Wilmouth, and other "Unknown Prison Guards" (collectively, "the officers") in their individual capacities, seeking compensatory and punitive damages for the injuries he suffered at Gibson's hands. The gist of his complaint was that although the officers were directly aware of Gibson's assault and had reasonable opportunities to prevent or interrupt it, they deliberately declined to do so, thereby violating his Fifth, Eighth and Fourteenth Amendment rights. J.A. 1–7 (complaint).

On the officers' ensuing joint motion for summary judgment, both on the merits of the constitutional claim and on the grounds of qualified immunity,[1] the opposing parties filed affidavits in support and opposition which gave radically different versions of the critical facts. A general summary of the different versions will suffice for purposes of our disposition of these appeals.

The essence of Winfield's version, as most completely set out in his responsive affidavit, was as follows. Sometime before the assault occurred, Winfield and Gibson had been visiting in a third inmate's cell where after drinking wine in the presence of some of the defendant officers, they began pushing each other around. Responding to a signal that a fight was going on, the officers (other than the warden) came to the scene, arriving after both Winfield and Gibson had returned to their respective cells. With the officers then on the scene, Gibson left his cell and moved toward Winfield's where the assault occurred. Despite ample opportunity to stop Gibson from entering Winfield's cell and assaulting him with a shank that he was visibly brandishing, the officers on the scene deliberately declined to intervene either to pre-

vent Gibson's entry, or to interrupt the assault that followed, or to give requested assistance to another inmate, Scott, who did finally physically intervene to stop Gibson's assault. This conduct was alleged to have constituted deliberate indifference to a known and specific threat of harm by a fellow inmate which violated Winfield's Eighth and Fourteenth Amendment rights.

The officers' version of the facts was diametrically opposed to Winfield's in critical respects. In various affidavits which generally agreed on the essential points, the officers depicted a quite different scenario. Its essence also can be summarized. When in response to the alarm signal the officers arrived in the area of the Winfield and Gibson cells, a number of inmates had gathered, making it difficult to determine who had been involved in the altercation. After Gibson had been identified as one of those involved and ordered taken from the area, the surrounding inmates began a protest in his behalf that caused the officers to fear a riot. To avert this, they were withdrawn from the immediate scene, leaving only two officers outside Gibson's cell. Very quickly, Gibson then came out of his cell, struck one of the officers, brushed by both of them, and ran to Winfield's cell where he completed his assault within a period of no more than 10 seconds. The officers' failure to intervene therefore resulted not from deliberate indifference but from sheer physical inability to act quickly enough in the confused, fast-moving situation they faced.

In their motion for summary judgment, the officers did not contend that as a matter of law Winfield's complaint did not allege a violation of constitutional right, nor, alternatively, that the right allegedly violated was not one clearly established at the time of the conduct in issue. Instead, they effectively conceded that under such decisions of this court as *Pressly v. Hutto,* 816 F.2d 977, 979 (4th Cir.1987), a right such as that asserted by Winfield of convicted inmates to be "pro-

---

**1.** In their joint motion, the defendants asserted a special defense for Warden Bass not available to the others, of non-participation in the conduct alleged and of freedom from vicarious liability for the conduct of any direct participants in that conduct. J.A. 17, 18. The district court did not rule separately on that defense, either on the merits or as to qualified immunity. The appellants have not sought to raise it as a separate issue on these appeals, hence we do not address it.

tected against physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm" was well-settled in this circuit at the critical time. J.A. 14, 72 (motion for summary judgment and response to opposition). Their contention was only that "the facts do not give us such a case here," *id., i.e.,* that on the "actual" facts, as asserted in the officers' various affidavits, the requisite deliberate indifference could not be found, so that they were entitled to judgment as a matter of law, either on the merits or on the basis of qualified immunity. Winfield's responsive affidavit then, as indicated, gave a critically opposing version of the material facts.

Considering the parties' conflicting versions, the district court then denied the officers' motion, both on the merits and on the qualified immunity defense.

Addressing the two grounds separately, the court first opined that as to the merits, "there are genuine issues of material fact," that "[i]ndeed, ... this case is peculiarly fact-specific and should proceed to trial on the merits." J.A. 80 (memorandum opinion). Addressing the qualified immunity defense, the court opined that the constitutional right concededly implicated by Winfield's factual assertions in his complaint and responsive affidavit was "clearly established" at the time of the assault. J.A. 81. The court did not then repeat the general conclusion it had stated in ruling on the motion on the merits, that with respect to the qualified immunity defense as well there "are genuine issues of material fact." Instead, in a cryptic reference to the "allegations" in Winfield's affidavit that some of the officers knew of Gibson's consumption of alcohol and weapons possession, the court opined that on these allegations, the officers "[were] bound to know that the safety of other inmates was at risk" and that their "permissive attitude ... would violate the inmates' right to continued protection and security." Without further elaboration on the factual issues, the court denied

the motion made on qualified immunity grounds. J.A. 81–2.

The officers timely noticed an appeal of right from the "Order ... denying the Defendants' motion for summary judgment which included the defense of qualified immunity." Later, presumably concerned that the appeal of right earlier noticed was effective only as to the denial of summary judgment on qualified immunity grounds, the officers timely sought and obtained from the district court a certification under 28 U.S.C. § 1292(b) of "all issues of law raised in the Appellants' motion for summary judgment." And, in due course, this court granted permission to appeal the issues so certified, and consolidated the two appeals.

We will first address the interlocutory appeal of right from the denial of summary judgment on grounds of qualified immunity in No. 94–7346, then the certified appeal of the denial of summary judgment on the merits in No. 95–6422 (formerly No. 94–8097).

## II

While the consolidated appeals were pending in this court, the Supreme Court held in *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."[2] *Id.* at ——, 115 S.Ct. at 2159. *Johnson* raises a threshold question of the appealability of that portion of the order which denied summary judgment on qualified immunity grounds.

Because the question goes to our appellate jurisdiction, we are required to address it at the threshold. For possible aid in doing so, we requested and received supplemental briefing.

■ Every order denying summary judgment sought on qualified immunity grounds necessarily involves two determinations,

---

**2.** *Johnson* overruled contrary decisional law in this circuit under which such fact-related determinations as well as pure legal determinations *were* reviewable on interlocutory appeals of right

from qualified immunity-summary judgment denials. *See Finelli v. Tabb,* 67 F.3d 67, (4th Cir. 1995).

whether or not expressly stated: (1) that the constitutional right allegedly violated is one that was "clearly established" at the time of the violation and (2) that genuine issues of fact exist as to whether the officers charged might nevertheless reasonably have believed their conduct did not violate that right. *See Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987). Here, as indicated, the district court expressly ruled in its memorandum opinion that the right allegedly violated was "clearly established" at the critical time. And, though without full elaboration, it also necessarily ruled that there were genuine issues of material fact respecting the reasonableness of the officers' conduct. The denial required both rulings.

■ *Johnson* essentially requires an appellate court considering whether (and to what extent) it has jurisdiction to entertain an interlocutory appeal from such an order to determine whether the appellant is seeking review of the clearly-established-law determination (a "purely legal" issue), or of the genuine-issue-of-material-fact determination (a "factual" issue), or possibly, of both. The "purely legal" issue is immediately reviewable (hence appealable); the "factual" or "evidence-sufficiency" issue is not. *Johnson,* ⸺ U.S. at ⸺–⸺, 115 S.Ct. at 2155–56.

■ How is this critical jurisdictional determination to be made? The notice of appeal ordinarily will not give the answer; it is required only to identify the ". . . order, or part thereof" from which appeal is taken, and not the particular legal rulings upon which the "order or part thereof" is based. So, the notice of appeal here does not perform the required service. *See* J.A. 83. The prime

and sufficient indicator ought to be, and will be if the Federal Rules of Appellate Procedure are properly observed, the "issues section" of the appellant's primary brief which is required to include "[a] statement of the issues presented for review." Fed.R.App.P. 28(a)(3). But not all briefs will do this with sufficient precision to give the answer in the section devoted to formal statement of the issues. The brief in this case regrettably does not. With respect to the court's denial of the motion for summary judgment on qualified immunity grounds, the "issue presented" is stated in unhelpful general terms simply as "Whether the officers are entitled to qualified immunity against all of Winfield's claims." J.A. 8. The answer is, however, given with sufficient precision, as ordinarily it will be, in the argument section of the appellants' brief. There, in the portion devoted to their qualified immunity defense, it is plain that the officers do not challenge (as they did not in the district court) the district court's express "purely legal" determination that the constitutional right alleged was "clearly established" at the critical time, but only the court's further essential determination that there were genuine issues of material fact respecting the reasonableness of the officers' conduct. The entire burden of the appellants' argument is that the evidence was insufficient to create a triable issue of material fact on this element of their defense and that on the undisputed evidence they had not violated Winfield's right by their failure to intervene to protect him. J.A. 20–26. Their argument on the point is summed up in the assertion that on the summary judgment record, there was "[n]o dispute regarding the reasonableness of . . . these officers' perceptions." J.A. 21, 22.[3]

---

**3.** In their principal brief, the officers argued that the district court's references, in ruling on the qualified immunity motion, to assertions (in Winfield's affidavit) that some of the officers knew of and condoned Gibson's alcohol consumption and weapons possession just before the assault, revealed a legal misapprehension that Winfield's Eighth Amendment claim should be assessed under a "pervasive risk of harm" theory. This theory, they rightly pointed out, could not properly be applied to this sort of isolated incident. *See, e.g., Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.1980). They do not, however, now suggest in their supplemental brief on the jurisdictional

question that this argument should be considered to have raised an issue of "pure law" which under *Johnson* would be immediately reviewable. Instead, they dismiss the references as "completely immaterial" to the jurisdictional inquiry in view of the fact that the claim had never been presented to the court as a "pervasive risk of harm case," but only as a "failure to protect from a specific risk of harm" case. Appellants' Supp.Br. 3 n. 2. We agree, and do not believe that the references could properly be interpreted in any event to indicate a perception by the district court that the claim was properly assessed under "pervasive risk of harm" theory.

Under *Johnson*, the district court's contrary determination that there *were* genuine issues of material fact on this element of the defense is not immediately appealable and we must therefore dismiss the appeal from that portion of the district court's order which denied summary judgment on grounds of qualified immunity.

## III

In No. 95–6422, we will dismiss the appeal on the basis that permission to appeal under § 1292(b) the denial of summary judgment on the merits was improvidently granted. When we entered the order permitting that appeal, the law of this circuit would have allowed us to entertain the interlocutory appeal in No. 94–7346, hence to consider on a consolidated basis the closely related merits and qualified immunity "fact-related" issues. With that no longer possible following *Johnson*, we conclude that the certified appeal should be dismissed as improvidently granted in light of supervening Supreme Court authority.

*APPEALS DISMISSED.*

The district court's references do not invoke the theory in terms or by citation to appropriate authority. Winfield, as the officers point out, has never invoked it in any of his submissions but has, instead, relied throughout on the obviously relevant specific-risk-of-harm theory. Under the circumstances, we think the district court's references can only be understood to reflect a perception (whose accuracy we need not address) that the proffered evidence was relevant to the question of the officers' deliberate indifference to the later assault itself.