87 F.3d 116
 Marinda Ann PITTMAN, Plaintiff-Appellant,
v.
Robert H. NELMS, III, individually and in his official
capacity as Wicomico County Deputy Sheriff; Christopher
Banks, individually and in his official capacity as Wicomico
County Deputy Sheriff; R. Hunter Nelms, Jr., individually
and in his official capacity as Wicomico County Sheriff;
Wicomico County, Maryland, Defendants-Appellees,
and
Darrin Johnson, individually and in his official capacity as
Wicomico County Deputy Sheriff; Donna L. Kelly,
individually and in her official
capacity as Wicomico County
Deputy Sheriff, Defendants.
 No. 95-1389.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1996.
Decided June 26, 1996.
 
 ARGUED: Paul V. Bennett, Brassel & Baldwin, Annapolis, Maryland, for Appellant. Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, Maryland, for Appellees. ON BRIEF: Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, Baltimore, Maryland, for Appellees.
 Before ERVIN and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Judge MOTZ and Senior Judge BUTZNER joined.
 OPINION
 ERVIN, Circuit Judge:
 
 
 1
 On May 19, 1992, Marinda Ann Pittman was injured by a bullet fired by Wicomico County, Maryland, Deputy Sheriff Robert Nelms ("Nelms"). Pittman sued Nelms and his partner, Chris Banks, alleging various constitutional and state-law violations. Nelms and Banks moved for summary judgment, which the district court granted. The court held as a matter of law that Nelms and Banks had not used excessive force and, alternatively, that they were entitled to qualified immunity. Pittman appeals the judgment in favor of Nelms.[1] Assuming arguendo that the force Nelms used was excessive, we find that he is entitled to qualified immunity. Thus we affirm the district court's summary judgment.
 
 
 2
 * Federal subject matter jurisdiction over Pittman's claims is based on 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983. We have appellate jurisdiction over the district court's summary judgment under 28 U.S.C. § 1291. We review that judgment de novo, and affirm only if the evidence, viewed in the light most favorable to Pittman, fails to create a genuine issue of material fact. Sempione v. Provident Bank, 75 F.3d 951, 954 (4th Cir.1996) (citing Fed.R.Civ.P. 56(c)).
 
 II
 
 3
 Pittman's injury occurred when Nelms and Banks attempted to stop a vehicle driven by suspected drug dealer Timothy Hudson. Banks approached the vehicle from the driver's side, and Nelms from the front and passenger side. Banks leaned into the open window to speak to Hudson, but Hudson started to drive away. Banks's arm became caught inside the window of the car, which carried him for twenty-five to thirty feet before it swerved to the right and released his arm. Nelms then fired at the car and the bullet struck Pittman, who was seated in the back seat.
 
 III
 
 4
 A qualified immunity case must develop through two primary levels. The first does not involve immunity at all, but focuses on the merits of the plaintiff's claim--whether the defendant's conduct violated a constitutional right of the plaintiff. It includes the factual issue of what actually happened, e.g., Buonocore v. Harris, 65 F.3d 347, 359-60 (4th Cir.1995), and the legal question of whether the defendant's actions were unconstitutional. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 5
 Only if the defendant did act illegally must the case proceed to the second level to determine whether he is, nevertheless, immune from suit. See Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992), followed in Drewitt v. Pratt, 999 F.2d 774, 779-80 (4th Cir.1993). The immunity level consists of two sub-issues--whether the law governing the violation was clearly established at the time of the incident, Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991), and whether a reasonable person in the defendant's position should have known that his conduct was illegal, DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir.1995). Both are issues of law for the court:
 
 
 6
 Only if a court determines that the plaintiff has alleged a violation of a right clearly established at the time the actions occurred should it proceed to determine whether a reasonable person in the official's position would have known that his actions violated that right. When the inquiry proceeds to this point, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct," Harlow, 457 U.S. at 818-19, 102 S.Ct. at 2738, 102 S.Ct. at 2738-39; however, the defendant may still be able to show "extraordinary circumstances" and "prove that he neither knew nor should have known of the relevant legal standard." Id. at 819, 102 S.Ct. at 2738. Since such a claim would turn "primarily on objective factors," id., this determination, too, is "also a matter of law for the courts," Collinson v. Gott, 895 F.2d 994, 998 (4th Cir.1990).
 
 
 7
 Id. at 794-95 n. 1.
 
 
 8
 Policy considerations favor deciding qualified immunity at the summary judgment stage:
 
 
 9
 One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.
 
 
 10
 Siegert, 500 U.S. at 232, 111 S.Ct. at 1793. When a court addresses qualified immunity in the summary judgment context, it can condense its analysis. As with any motion for summary judgment, it must view the evidence in the light most favorable to the nonmovant, so it need not make factual findings. Nor must it determine directly whether the plaintiff's evidence indicates a constitutional violation. Instead it can combine the second prong of the constitutional inquiry and the first prong of the immunity inquiry by asking whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." Id. at 231, 111 S.Ct. at 1793 (emphasis added). If the answer is affirmative, the court must determine whether the defendant "knew or should have known" that his conduct was illegal. DiMeglio, 45 F.3d at 795.[2]
 
 
 11
 In her brief, Pittman stated the facts in the light most favorable to herself:
 
 
 12
 Appellees Nelms and Banks had a long-standing and ongoing feud with Timothy Hudson, the driver of the vehicle in which Appellant was a passenger. Appellees waited patiently for "Hux" to leave himself vulnerable to a stop and search situation. When confronted by Deputy Banks, Hux began to drive away. Banks' arm became entangled in the vehicle[,] most likely when he tried to grab the keys, and he was thrown aside when the vehicle made a turn to the right. Banks got back on his feet, ran towards the vehicle and fired at it as it was speeding away towards the street. Meanwhile, Nelms, whose bullet actually pierced the vehicle and injured Appellant, fired at the vehicle at the same time that Banks' shot was fired, when Nelms had a clear and unobstructed view of Banks, so Nelms could see that Banks had not been run over and killed. Nelms' shot was fired when the vehicle was approximately twenty-five (25) feet away from him, driving away from him, and posing no threat at all to Nelms at the time.
 
 
 13
 Accepting as true Pittman's version of the facts, we must determine whether the force used was excessive under clearly established law. Force is not excessive if it is " 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).[3] The Graham Court elaborated further on what it meant by objective reasonableness:
 
 
 14
 The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See Terry v. Ohio, [392 U.S. 1,] 20-22 [88 S.Ct. 1868, 1879-81, 20 L.Ed.2d 889 (1968) ].... "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d [1028,] 1033 [ (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) ], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
 
 
 15
 Id. at 396-97, 109 S.Ct. at 1872. Among the factors a court should consider is whether the suspect is resisting arrest or attempting to flee. Id. at 396, 109 S.Ct. at 1871-72.
 
 
 16
 In Drewitt v. Pratt, we upheld a police officer's qualified immunity against an excessive force claim on facts similar to those in the instant case. 999 F.2d at 779-80. After observing Drewitt driving recklessly, Officer Pratt ran toward the car with his gun drawn and ordered him to stop. Id. at 776. But Drewitt sped up, Pratt was caught on the hood of the car, and Pratt fired. Id. We affirmed the district court's ruling that no genuine issue of material fact existed as to whether Pratt's actions were objectively reasonable, and we held that he was entitled to qualified immunity. Id. at 780.
 
 
 17
 Pittman does not dispute that the entire series of events took only a few short seconds, and that during that period Banks was in serious danger. In the terminology of the Supreme Court's decision in Graham, the situation was "tense, uncertain, and rapidly evolving." 490 U.S. at 396-97, 109 S.Ct. at 1872. In light of Graham and Drewitt, we cannot conclude that the force Nelms used was excessive under clearly established law. Under these circumstances, an objectively reasonable officer certainly could have believed that his decision to fire was legally justified. See Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). Thus Nelms is entitled to qualified immunity.
 
 IV
 
 18
 For the foregoing reasons, we affirm the district court's summary judgment.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The issues Pittman raises apply only to her claims against Nelms. She presents no arguments against the summary judgment in favor of Banks, so we do not address that judgment in this opinion. In her original complaint, Pittman also included as defendants Deputies Darrin Johnson and Donna Kelly, Sheriff Hunter Nelms, and Wicomico County. She voluntarily dismissed her claims against Johnson and Kelly. The district court dismissed with prejudice her claims against the Sheriff and the County, finding that they depend on a judgment against Nelms. And it dismissed without prejudice the state-law claims, because its supplemental jurisdiction over them depended on the dismissed federal causes of action
 
 
 [2]
 Courts have not stated previously that the accepted summary judgment analysis is a condensed version of the full analysis. Apparently because so many qualified immunity cases are decided by summary judgment, courts routinely have treated the summary judgment framework as "the" qualified immunity analysis, without expressly acknowledging that the purpose of qualified immunity is to protect, under certain circumstances, officials who in fact have acted illegally. The hybrid inquiry of whether the plaintiff has "allege[d] the violation of a clearly established constitutional right," Siegert, 500 U.S. at 231, 111 S.Ct. at 1793 (emphasis added), is an easier question than whether there was a violation at all. It is useful, therefore, when a court is determining whether a defendant should be burdened by a trial, or when the law is unclear. But it invokes immunity prematurely if the facts indicate no constitutional violation, clearly established or otherwise
 
 
 [3]
 Like Pittman, Graham grounded his claim on multiple provisions of the Constitution. The Court held that claims for
 excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person .... are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard.
 Id. at 388, 109 S.Ct. at 1867-68. Thus we limit our constitutional inquiry to the Fourth Amendment.