Pamela **THOMPSON**, Administratrix of the Estate of Windy Gail Thompson, deceased, and Next Friend and guardian ad litem for Delvicio Rashad Thompson and Whitney Sharee Thompson, the minor children of Windy Gail Thompson, Plaintiff,

v.

Mark **FARMER**, Charlotte Police Officer, and City of Charlotte, Defendants.

No. 3:94CV205-P.

United States District Court, W.D. North Carolina, Charlotte Division.

Aug. 28, 1996.

James E. Ferguson, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, for Pamela Thompson.

G. Michael Barnhill, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, Stephanie H. Webster, Charlotte, NC, for Mark Farmer and City of Charlotte, NC.

### ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the Motion of the Plaintiff to certify the Defendant's interlocutory appeal as frivolous and set this matter for trial (document # 61). For the reasons stated herein, that Motion will be denied.

---

1. The Court refers to the Plaintiff as "Thompson"

## I. BACKGROUND

On December 29, 1993, Mark Farmer, an officer of the Charlotte Police Department, tried to make a routine traffic stop of a vehicle driven by Windy Gail Thompson. Thompson attempted to elude Farmer, and he gave chase. The high-speed chase terminated when Thompson's car collided with a telephone pole and was badly damaged. A confrontation between Farmer and Thompson followed, and that incident ended when Thompson tried to drive away from the scene of her accident and Farmer fired on Thompson killing her instantly. Pamela Thompson sued Farmer and the City of Charlotte as administratrix of her sister's estate and next friend and guardian *ad litem* of her sister's children.[1]

On May 22, 1996, this Court denied Farmer's motion for summary judgment (document # 54). Several of the Court's holdings are relevant to the interlocutory appeal filed by Farmer and Thompson's request that this Court certify that Farmer's appeal is frivolous. First, the Court held that there were genuine issues of material fact that precluded the Court from granting summary judgment on Farmer's claim of qualified immunity. More specifically, the Court held that when Thompson was given the benefit of all reasonable inferences the Court could not determine as a matter of law that Farmer was inside the vehicle and being dragged by the car when he fired on Thompson. In addition, the Court stated that Farmer would not be entitled to summary judgment as a matter of law even if one assumed he was inside the vehicle when it began moving because reasonable persons might differ over whether Farmer's use of deadly force was reasonable under the circumstances.

In its Order the Court also agreed with Farmer that the state-law privilege to use deadly force set forth in N.C.G.S. § 15A–401(d) governed his use of deadly force and mirrored the objective reasonableness requirement imposed by the United States Constitution. Thus, the Court concluded that Farmer was not entitled to summary

unless the context indicates otherwise.

judgment as to Thompson's wrongful death claim on the grounds that his use of deadly force was privileged under N.C.G.S. § 15A–401(d) given the genuine disputes of material fact noted above. Later, Farmer filed a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). In that motion Farmer argued, in essence, that even if his use of deadly force was not authorized by N.C.G.S. § 15A–401(d) he still was entitled to summary judgment based upon the common-law doctrine of public officer immunity. The Court rejected that argument for the reasons given in its order denying the Rule 59 motion (document # 63). Basically, the Court held that N.C.G.S. § 15A–401(d) abrogated any public officer immunity for the use of deadly force by creating a state-law privilege for the use of deadly force but specifically providing that nothing in the statute justified willful, malicious or criminally negligent conduct or excused or justified the use of unreasonable or excessive force. The Court concluded that given the genuine disputes of material fact noted earlier a reasonable person might conclude that Farmer's actions were willful, malicious, criminally negligent or constituted the use of unreasonable and excessive force such that he would not be entitled to the privilege created by N.C.G.S. § 15A–401(d).

The final aspect of the Court's prior dispositions relevant to this motion concerns the Court's decision to abstain from deciding an issue of state law. More specifically, in its Order denying Farmer's motion for summary judgment the Court held that Thompson's claim that the City of Charlotte's selective waiver of sovereign immunity violated Art. I § 19 of the North Carolina Constitution involved an important and unclear area of state law such that the Court would decline to exercise jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c)(1). As a result, the Court remanded that state-law claim to the court from which this action was removed. See 28 U.S.C. § 1441(c).

Farmer appealed this Court's orders on several grounds that implicate the holdings recited above. First, he claims that this Court erred when it held that Farmer was not entitled to qualified immunity as to Thompson's excessive force claim as a matter of law. Here, Farmer appears to argue that there is no genuine issue of fact concerning whether he was inside the vehicle and being dragged along the road when he shot Thompson. He also challenges this Court's statement that even if he were in the vehicle a jury would still be entitled to determine whether his use of deadly force was reasonable under the circumstances. Second, Farmer claims that this Court erred when it held that Farmer was not entitled to public officer immunity as to Thompson's wrongful death claim against Farmer individually as a matter of law under the laws of North Carolina. Third, Farmer claims that this Court abused its discretion when it held that Thompson's claim that the City's selective waiver of sovereign immunity violated the North Carolina Constitution raised an important issue of unclear state law that should be resolved by the courts of North Carolina such that abstention was appropriate, and therefore, the Court should not exercise supplemental jurisdiction over that state-law claim.

Thompson has moved to certify Farmer's appeal as frivolous and urged this Court to set the matter for trial. According to Thompson, Farmer has no right to an interlocutory appeal on his qualified immunity claims because the immunity inquiry turns on issues of fact, not law, and interlocutory appeal in such cases is barred by the Supreme Court's decision in *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). She also argues that this Court's decision to abstain and not exercise its supplemental jurisdiction is not a final decision that is subject to an interlocutory appeal pursuant to 28 U.S.C. § 1291 under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

## II. *DISPOSITION*

At the outset it is necessary to consider whether the Fourth Circuit would approve of the procedure Thompson seeks to employ in this case. Relying on *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989), Thompson has urged this Court to certify Farmer's appeal as frivolous and proceed to trial. Farmer argues that the Fourth Circuit has not

adopted *Apostol* such that this Court has no authority to certify the appeal as frivolous.

This Court has reviewed the Seventh Circuit's decision in *Apostol* and agrees with Thompson that this Court has power to certify an appeal as frivolous in an appropriate case. The Court believes that the reasoning of *Apostol* is well-rooted in the general principles governing appellate jurisdiction such that the Fourth Circuit would adopt its eminently sensible holding. Indeed, it seems the Supreme Court has approved of this procedure. *See Behrens v. Pelletier,* —— U.S. ——, ——, 116 S.Ct. 834, 841, 133 L.Ed.2d 773 (1996) (citing four circuits that have adopted this procedure). Of course it is also true, as Farmer notes, that the Court of Appeals will also satisfy itself that the appeal has merit sufficient to confer appellate jurisdiction. But there is no necessary conflict between appellate review and use of the procedure outlined in *Apostol*—they are complementary procedures. This is even more certain when one considers that *Apostol* also recognizes that the Court of Appeals may stay an action in the district court while it reviews the district court's determination that an appeal is frivolous. *See Apostol,* 870 F.2d at 1339.[2]

Thompson has argued that Farmer's appeal of this Court's denial of qualified immunity is not the proper subject of an interlocutory appeal. This Court agrees. As noted earlier, when the Court denied Farmer's motion for summary judgment on the basis of his qualified immunity it did so, in part, on the grounds that material issues of fact remained concerning whether Farmer was in the car and being dragged along the road such that he could reasonably believe that he was actually in danger of serious bodily harm. This is precisely the sort of evidentiary determination that precludes an interlocutory appeal from a denial of qualified immunity under the rule stated in *Johnson. See*

*Johnson,* at —— – ——, 115 S.Ct. at 2153–54; *see also Buonocore v. Harris,* 65 F.3d 347, 359–60 (4th Cir.1995). Therefore, the jury will have to determine these disputed facts in order to determine whether Farmer is entitled to qualified immunity.

Farmer does not really address the rule in *Johnson, supra,* as it applies in this case. Instead he cites *Pittman v. Nelms,* 87 F.3d 116 (4th Cir.1996) and argues that he is entitled to summary judgment on his immunity defense as a matter of law. The Court does not believe that *Pittman* entitles Farmer to summary judgment in this case because the Court believes that the immunity inquiry turns, in part, on whether he was actually in the car and being dragged alongside it when he fired on Thompson. For it is true as this Court noted in its prior Order that the purpose of qualified immunity is to protect officers from the consequences of their reasonable mistakes, *see Malley v. Briggs,* 475 U.S. 335, 342–44, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) (qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law); *see also Hunter v. Bryant,* 502 U.S. 224, 226–28, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); *Pittman,* 87 F.3d at 119 n. 2; but it is also true that these mistakes must be reasonable. This is not a case like *Pittman* where an officer was actually dragged twenty-five or thirty feet before the plaintiff was fired upon. Under such circumstances this Court can understand the Fourth Circuit's holding that the decision to fire on the car even though it posed no immediate threat to the officers was a reasonable mistake under tense circumstances—especially when no fatal injury resulted.

But in this case there may well have never been a serious threat to Farmer because there is a genuine dispute of material fact as to Farmer's location and whether he was

---

2. Farmer also argues that a district court cannot certify an appeal as frivolous because it cannot know the subject matter of the appeal from the notice of appeal itself. Whatever the merits of this argument in most cases it is not persuasive where the parties brief the merits of the appeal pursuant to a motion made under *Apostol, supra.* It also ignores the knowledge that the district

court will acquire when ruling on motions for summary judgment, motions for a new trial, or motions to alter or amend a judgment. Finally, the Court notes that "[f]rivolousness is not the only reason a notice of appeal may be ineffectual." *see Apostol,* 870 F.2d at 1339, and in other cases a court may well have certain knowledge concerning why a notice of appeal is ineffectual.

being dragged by the car. Indeed the Court believes that Farmer's claim for qualified immunity would be incredible if he was not being dragged along-side the car when he decided to fire on Thompson because in such a case there would be no (reasonable) basis for Farmer to conclude, as he has argued, that Thompson posed a serious threat to his safety. And unlike *Pittman*, this case is governed by *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), which specifically holds that deadly force can only be used in limited circumstances. Under these circumstances the Court does not believe that *Pittman* entitles Farmer to summary judgment on his qualified immunity claim, and also, it believes that Farmer's qualified immunity claim is not the proper subject of an interlocutory appeal.

 Seen in the light of the genuine dispute over material facts it appears that the second basis on which the Court denied Farmer's claim of qualified immunity does not provide a basis for an interlocutory appeal. Here, the Court refers to that portion of its opinion where it stated that *even if* the facts were as Farmer argues, a question of *fact* would still be presented as to whether his actions were reasonable under the circumstances. Farmer's briefing in opposition to the motion to certify the appeal as frivolous indicates he seeks to appeal this statement also. But that issue may never be presented depending on how the jury finds the facts. As a result it appears that this part of the Court's earlier opinion does not provide the basis for an interlocutory appeal. Further, it also appears that the largely hypothetical issue Farmer raises is properly characterized as a factual issue at any rate and, as a result, it does not provide the basis for a interlocutory appeal.

3. If the Court of Appeals exercises jurisdiction over this claim, it might also address whether there is any significant difference between the liability and qualified immunity defense in the context of an excessive force claim—an issue raised by the parties and noted in the Court's opinion and order denying Farmer's motion for summary judgment.

4. It bears noting that *Mitchell* envisioned granting immunity at two distinct stages of the case.

Farmer's argument does bear some consideration because it raises an issue this Court will have to decide at some point and the Court of Appeals *may* choose (and have authority) to consider this claim in connection with those other issues that are properly subject to an interlocutory appeal. *See Johnson*, at ——, 115 S.Ct. at 2159.[3] In essence, Farmer argues that if the facts are as he asserts then he is entitled to summary judgment because his use of deadly force was objectively reasonable under the circumstances. And the apparent thrust of Farmer's appeal from this statement is his conviction that the question of reasonableness is one for the Court.

The starting point for this claim is the Court's analysis in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, at 817–19, 102 S.Ct. at 2738. Later, the Supreme Court held that denial of an immunity claim was the proper subject of an interlocutory appeal in part because such claims represented a purely legal question: "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions...." *Mitchell v. Forsyth*, 472 U.S. 511, 526–28, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). So saying the court went on to state that Mitchell's immunity claim turned on whether it was clearly established in November 1970, that a warrantless wiretap aimed at gathering intelligence regarding a domestic threat to national security was illegal and it held that this legal norm was not clearly established. *Mitchell*, at 528–32, 105 S.Ct. at 2817–18.[4]

Where the plaintiff asserted that the defendant violated a clearly established legal norm that was not, in fact, clearly established, the court indicated that such claims should be disposed of by dismissal prior to discovery. *Mitchell*, at 525–26, 105 S.Ct. at 2815; *see also Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (dismissal on grounds of qualified immunity proper where plaintiff's complaint did not allege a clearly established legal norm or its violation). The court also indicated that immu-

The rationale driving the interlocutory appeal in these cases is that the question of qualified immunity are properly subject to appeal because they involve abstract issues of law typically "whether the federal right allegedly infringed was 'clearly established' ". *Behrens*, at ——, 116 S.Ct. at 842. But it is significant that the appellate jurisdictional inquiry focuses on whether the lower court's immunity decision is properly characterized as one that turns on "evidentiary sufficiency" see *Johnson*, at ——, 115 S.Ct. at 2154, or "abstract issues of law". *See Behrens*, at ——, 116 S.Ct. at 842. The issue presented by Farmer's argument also concerns whether the objective reasonableness of his conduct is properly considered a question of fact or law.

Taken together *Mitchell* and *Johnson* establish a continuum along which the court makes qualified immunity decisions. On one end of the continuum is a case like *Mitchell* or *Siegert* where the plaintiff fails to allege conduct that violates a clearly established legal norm.[5] The other end of the continuum is cases like Johnson where the plaintiff does allege conduct that violates a clearly established legal norm, but there is a factual dispute concerning whether the conduct alleged by the plaintiff actually occurred.

In between the two extremes created by Mitchell and Johnson there is a related question that arises in cases where the law is clearly established (as in this case), the facts are undisputed (as Farmer's argument assumes), and the only issue that remains is whether the officer's belief that his actions comported with the law is objectively reasonable. Farmer's argument implicates this precise issue because he has argued that if the facts are as he alleges—he was leaning in the car and being dragged along-side the vehicle—then the question of whether his actions were objectively reasonable is a question of law for the Court. Put another way, Farmer argues that since the (assumed) facts and the law are established it is up to this Court to decide whether his belief that he had probable cause to believe that Thompson represented a significant threat of death or serious injury to himself was objectively reasonable.[6] So this portion of Farmer's argument presents the following question: in cases where the law is clear and the facts are clear but the Court determines that reasonable persons could differ over whether a reasonable government official "should have known that his conduct was illegal" *Pittman*, 87 F.3d at 119, does the Court or the jury make the ultimate immunity determination?

The answer is not entirely clear. In *Hunter, supra*, the Supreme Court reversed the Ninth Circuit's holding that whether a reasonable officer could have believed he had probable cause is a question for the trier of fact in part because such an approach "routinely places the question of immunity in the hands of a jury." *See Hunter*, at 228–29, 112 S.Ct. at 537. This implies that in at least some (non-routine) cases immunity questions may be placed in the jury's hands or at least fails to state the immunity inquiry is always a question of law.[7] One court has touched on

---

nity claims should be granted where the plaintiff's complaint alleged acts that violated clearly established law, but discovery failed to uncover evidence sufficient to create a genuine issue as to whether the defendant committed the acts alleged by the plaintiff. *Mitchell*, at 525–26, 105 S.Ct. at 2815. Of course *Johnson* recognizes that there may be cases where the immunity inquiry can only be made at the close of trial.

5. Frequently, this legal inquiry focuses on whether the legal right asserted by the plaintiff was clearly established in a sufficiently particularized sense that a reasonable officer would have known that his conduct violated the right. *See Anderson v. Creighton*, 483 U.S. 635, 637–43, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987); *Zepp v. Rehrmann*, 79 F.3d 381, 387–88 (4th Cir.1996).

6. Put another way, Farmer argues that where the facts and law are clearly established a public official's immunity claim represents a purely legal question that cannot be submitted to the jury even where the court concludes that reasonable persons could differ concerning whether his actions were objectively reasonable under the circumstances.

7. Farmer notes that in *Behrens, supra*, the Supreme Court indicated that *Johnson, supra*, does not prevent all appeals from denials of summary judgment. *See Behrens*, at ——, 116 S.Ct. at 842. This is true, but it is not clear whether *Behrens* addresses the issue before this Court. It seems just as likely to this Court that the portion of *Behrens* cited by Farmer means that in cases where a district court has held that there is no genuine dispute as to material facts (without specifying what facts it has found) and gone on

the issue and held that submitting the issue to the jury was proper or, at a minimum, a harmless error. *See Sloman v. Tadlock,* 21 F.3d 1462, 1467–69 (9th Cir.1994); *see also Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1099–1100 (9th Cir. 1995) (noting issue has not been resolved but going on to hold that defendants breach of dam was reasonable under the circumstances apparently because no reasonable jury could conclude otherwise).

This Court is sympathetic to the view that the issue of whether Farmer's use of force was objectively reasonable under the circumstances because he had probable cause to believe that Thompson posed a significant threat of serious injury to himself is a question of fact for the jury. Like the panel in *Sloman, supra,* the Court believes that:

> there is no reason to think that allowing the jury rather than the judge to determine whether an officer's conduct was reasonable under the circumstances would be inimicable [sic] to the policies that animate immunity. On the contrary, evaluating the reasonableness of human conduct is undeniable within the core area of jury competence. Just as the judge can most

effectively determine whether a given constitutional right was 'clearly established' at a particular point in time, the jury is best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place.

*Sloman,* 21 F.3d at 1468.[8] Indeed, the Court believes that this case is a perfect example of why juries can be entrusted with the immunity question when it turns on such a truly factual issue as reasonableness under the circumstances. For as the Court noted in its prior Order, any immunity instruction given in this case will entail an inquiry that is virtually identical to an instruction given on liability. *See Rowland v. Perry,* 41 F.3d 167, 173 (4th Cir.1994) ("The immunity test and the test on the merits both rely on an objective appraisal of the reasonableness of the force employed."); *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir. 1995) (same). If the objective reasonableness of Farmer's use of deadly force—the liability inquiry—is a question of fact, why shouldn't the question of an objectively reasonable (but reasonably mistaken) use of force—the immunity inquiry—be a question of fact?[9]

to hold that the undisputable facts support a violation of clearly established law, then the defendant can appeal the district court's determination that the conduct violated clearly established law, because the interlocutory appeals in that case appear to have concerned the purely legal question of whether the plaintiff had a clearly established legal right or property interest in his employment at Pioneer Bank, or elsewhere. *See Behrens,* at ——, ——, 116 S.Ct. at 838, 840. If this is correct, then *Behrens* does not address the situation in this case: who decides if an officer's conduct is objectively reasonable where the court determines that reasonable jurors could differ over whether the officer reasonably believed that his conduct comported with the law.

8. The panel in *Sloman, supra,* opined that because the constitutional tort at issue in *Sloman* hinged on the defendant's motive, that case was distinguishable from excessive force cases where the excessive force inquiry turned on an objective inquiry. *See Sloman,* 21 F.3d at 1468 n. 9. Although the distinction between subjective and objective inquiries is certainly valid and important for immunity purposes, *see id; Halperin v. Kissinger,* 807 F.2d 180, 185–90 (D.C.Cir.1986), and it can be said with greater certainty that the where subjective intent is an issue then the issue is one of fact, these cases do not require a holding that objective reasonableness is a ques-

tion of law for the court. Indeed objective reasonableness is frequently a question for the jury.

9. Other courts appear to reason that when there is a genuine dispute of material fact concerning whether a reasonable officer should have known that his conduct violated the law, the question is a question of fact such that it is properly submitted to the jury. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518–520 (2nd Cir.1996) (upholding district court's grant of qualified immunity after stating no rational jury could fail to conclude that it was objectively reasonable for the defendant to believe that she was acting in a fashion that did not violate defendant's rights and concluding that no rational jury could fail to find that the defendants had an objectively reasonable basis for removing child from the home.); *Miller v. Schoenen,* 75 F.3d 1305, 1309–11 (8th Cir. 1996) (reviewing district court's denial of defendant's qualified immunity claim on the grounds that there were genuine issues of material fact concerning whether the defendants actually knew of the plaintiff's medical needs and acted reasonably in light of that knowledge and indicating that a jury would have to decide these issues); *see also Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir.1996) (apparently treating objective reasonableness of force as a fact question and dismissing appeal from district court's deni-

The case law in the Fourth Circuit is not entirely clear. For example, in *Pittman, supra,* the court stated that the issue of whether a reasonable person should have known that his conduct was illegal was a "question of law for the court" and went on to hold that granting summary judgment in favor of a police officer with respect to an excessive force claim was proper because the officer's decision to fire was legally justified. *See Pittman,* 87 F.3d at 119–20. And the weight of the case law seems to indicate that the question of immunity in these circumstances is a question of law for the court.

But the Fourth Circuit has also stated that "[i]f there are genuine issues of historical fact respecting the officer's conduct *or its reasonableness under the circumstances,* summary judgment is not appropriate, and the issue must be reserved for trial." *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir.1992) (emphasis added). Since then the Fourth Circuit has cited *Pritchett, supra,* with approval while holding that "[e]ven under the police officers' version of the facts, the amount of force used may have been unreasonable." *Taft v. Vines,* 70 F.3d 304, 315 (4th Cir.1995). And in *Winfield v. Bass,* 67 F.3d 529 (4th Cir.1995), the Fourth Circuit held that it did not have appellate jurisdiction over a district court's denial of qualified immunity apparently on the grounds that there were genuine issues of fact concerning the reasonableness of the officer's conduct. *Id.* at 532–33.[10] These cases appear to place genuine issues of material fact concerning the reasonableness of an officer's conduct within the hands of a jury. As noted earlier, this Court believes that there is much to recommend the notion that the objective reasonableness of an officer's actions is a question of law for the Court where reasonable persons could differ as to whether the officer's actions were reasonable under the circumstances. Perhaps the Court of Appeals will use Farmer's interlocutory appeal to put this Court at ease with respect to this issue if the law governing appellate jurisdiction allows such good works.

■ The next issue raised by Farmer's appeal is his claim that he is entitled to public officer immunity for his use of deadly force. As noted earlier, this Court previously rejected this claim for the reasons given in its Order denying Farmer's motion under Fed.R.Civ.P. 59(e). The Court agrees that this grounds for Farmer's appeal presents an abstract issue of law and there are arguments that can be made on both sides of that issue. Although there is a question here concerning whether the logic that allows interlocutory appeals from federal immunity determinations that hinge on abstract questions of law permits an interlocutory appeal on state-law immunity determinations that are legal in nature, it does seem likely that this is the case—and Thompson has not argued otherwise. Thus, this Court cannot say that Farmer's interlocutory appeal on this issue is frivolous.

That leaves Farmer's appeal from this Court's decision not to exercise supplementary jurisdiction over Thompson's claim that the City's selective waiver of sovereign immunity violates the equal protection provided by the North Carolina Constitution. Here the Court agrees that the Supreme Court's recent decision in *Quackenbush v. Allstate Ins. Co.,* —— U.S. ——, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) does indicate that the decision not to exercise supplemental jurisdiction over Thompson's claim under the North Car-

---

al of defendant's motion for summary judgment on grounds of qualified immunity where district court *said it could not find, as a matter of law,* that force used by police officer was objectively reasonable in light of the threat presented by plaintiff); *Woolfolk v. Smith,* 81 F.3d 741, 743 (8th Cir.1996) (refusing to exercise appellate review of district court's denial of qualified immunity on the grounds, *inter alia,* that there was a genuine issue of fact regarding whether officer acted reasonably in entering the scene of deadly encounter with plaintiff.); *Reynolds v. County of San Diego,* 84 F.3d 1162, 1168–70 (9th Cir.1996) (rejecting appellate challenge to district court's grant of qualified immunity on plaintiff's excessive force claim because plaintiff's evidence failed to raise a genuine issue of material fact about the reasonableness of defendant/officer's conduct.)

**10.** The Court notes that the panel opinion in *Winfield, supra,* has been vacated pending a rehearing *en banc.* Therefore it may be that the *en banc* opinion in *Winfield* will further explain the proper application of *Johnson* in cases like this one.

olina Constitution is a "final" decision within the meaning of 28 U.S.C. § 1291 such that it is properly subject to an interlocutory appeal. Although it may be that different considerations govern the decision not to exercise supplemental jurisdiction where there is no independent basis for federal jurisdiction over state-law claims that present complex issues of state law given the express exception created by 28 U.S.C. § 1367(c)(1), and the authority conferred by 28 U.S.C. § 1441(c), *see also PAS v. Travelers Ins. Co.*, 7 F.3d 349 (3rd Cir.1993); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir.1995), the Court does agree that *Quackenbush* surely indicates that Farmer's appeal from this Court's decision not to exercise supplemental jurisdiction is not frivolous.

In the case at bar Farmer has appealed three aspects of this Court's prior rulings. He appeals the denial of his motion for summary judgment on the basis of his claim of qualified immunity under federal law, the denial of his motion for summary judgment on the basis of his claim of public officer immunity under North Carolina law, and he appeals this Court's decision to abstain from ruling on Thompson's claim that the City of Charlotte has violated the equal protection provided by the North Carolina Constitution. Thompson has asked this Court to certify that Farmer's appeal is frivolous. Although the Court does believe that there is no appellate jurisdiction over Farmer's appeal from this Court's denial of summary judgment on Farmer's claim of qualified immunity as to Thompson's federal claim, the Court also believes that Farmer can properly appeal this Court's denial of public officer immunity under state law as well as the Court's decision not to exercise supplemental jurisdiction over Thompson's claim based on the North Carolina Constitution. For these reasons, Thompson's motion will be denied.

**NOW, THEREFORE, IT IS ORDERED** that Thompson's Motion to certify the Defendant's interlocutory appeal as frivolous and set this matter for trial be, and hereby is, *DENIED.*