898 F.2d 32
 Phyllis Jean BELCHER, Administratrix of the Estate of Arthur
Belcher, Plaintiff-Appellee,
v.
Sidney OLIVER, individually and as Mayor of Clendenin, West
Virginia; J.R. Clendenin, individually and as Chief of
Police of Clendenin, West Virginia; Frank Carnegie,
individually and as Police Officer of Clendenin, West
Virginia; Lloyd Lowe, individually and as Police Officer of
Clendenin, West Virginia; City of Clendenin, West Virginia,
a municipal corporation, Defendants-Appellants.
 No. 89-2918.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1990.
Decided March 12, 1990.
 
 Steven Paul McGowan (argued) and W. Randolph Fife (on brief), Steptoe & Johnson, Charleston, W.Va., for defendants-appellants.
 Matthew Joseph Hayes (argued) and William W. Pepper (on brief), Pepper & Nason, Charleston, W.Va., for plaintiff-appellee.
 Before RUSSELL, HALL and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 On September 23, 1986, plaintiff's father, Arthur Belcher, committed suicide by hanging himself while detained at the Clendenin City jail on charges of public intoxication and hazardous driving. Plaintiff contends that the failure of jail officials to remove Belcher's belt and shoes and afford him medical screening and treatment constituted impermissible punishment under Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and "deliberate indifference" to his serious medical needs under the standard enunciated in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We disagree and hold defendants entitled to qualified immunity on these claims because they committed no violation of clearly established constitutional law. In so holding, we reverse the judgment of the district court.
 
 I.
 
 2
 Arthur Belcher was arrested by police officer Lloyd Lowe on September 23, 1986, in Clendenin, West Virginia, and charged with public intoxication and hazardous driving. Belcher was transported to the Clendenin City Jail by officer Frank Carnegie. Clendenin Mayor and Municipal Judge Sidney Oliver received the complaints and issued warrants against Belcher. Belcher was placed in a city jail cell. Although it was their normal procedure to do so, the officers did not remove Belcher's shoelaces and belt before incarcerating him.
 
 
 3
 An hour and twenty minutes after Belcher was incarcerated, he was found by officer Carnegie and by plaintiff, who had arrived to post bond, to have hung himself with his belt. Belcher did not respond to the administration of CPR and was pronounced dead at a local hospital where he had been taken by ambulance.
 
 
 4
 Plaintiff filed suit in the United States District Court for the Southern District of West Virginia against the City of Clendenin and against Mayor Oliver, police officers Lowe and Carnegie, and Chief of Police J.R. Clendenin, individually and in their respective official capacities, pursuant to 42 U.S.C. Secs. 1981, 1983 and 1988. She alleged violations of decedent's constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments.
 
 
 5
 The district court granted defendants' motion for summary judgment as to all but the claims relating to medical care. The court held that there were genuine factual disputes as to whether the combination of defendant officers' failure to remove decedent's belt and shoelaces and the absence of medical screening and treatment constituted "deliberate indifference" to decedent's medical needs within the meaning of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Defendants appeal the denial of qualified immunity on these claims. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 II.
 
 6
 The question before us is "whether the facts alleged ... support a claim of violation of clearly established law" with regard to the rights of a pretrial detainee. Mitchell, 472 U.S. at 528 & n. 9, 105 S.Ct. at 2816 & n. 9. The Supreme Court has held that a pretrial detainee has a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979). The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee. Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing City of Revere, 463 U.S. at 244, 103 S.Ct. at 2983, and Estelle, 429 U.S. at 104-06, 97 S.Ct. at 291-92).
 
 
 7
 Plaintiff claims that defendants' actions were punitive and deliberately indifferent to Belcher's serious medical needs under clearly established law. We disagree. The actions which allegedly make out a violation of due process--the failure of officers Lowe and Carnegie to afford Belcher medical treatment and screening and to remove his belt and shoelaces--simply do not rise to the level of deliberate indifference to a serious medical need or manifest an intent to punish.
 
 A.
 
 8
 The officers' failure to afford Belcher medical screening or attention did not violate constitutional standards. The general right of pretrial detainees to receive basic medical care does not place upon jail officials the responsibility to screen every detainee for suicidal tendencies. Danese v. Asman, 875 F.2d 1239, 1243-44 (6th Cir.1989). There can be no claim against the officers for inadequate medical care when there exists no objective evidence that Belcher even had a serious need for such attention. See Martin, 849 F.2d at 871.
 
 
 9
 There was, in fact, no such evidence in this case. At no time during his one hour and twenty minute incarceration did Belcher express any concern about his well-being or behave in a way that would have indicated to the officers that he posed a risk of suicide or that they should take any additional action. See State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir.1983). The officers checked their prior arrest file to see if Belcher was a habitual alcoholic who should be admitted to an alcohol treatment center rather than being incarcerated. There was no card on file for Belcher. The officers had no absolute duty to protect Belcher from harming himself merely because he was intoxicated, where they had no reason to believe that his intoxicated state would lead to harm which was self-inflicted.
 
 
 10
 The Seventh Circuit faced a similar claim in State Bank of St. Charles v. Camic. Unlike Belcher, the intoxicated prisoner in Camic, 712 F.2d at 1146, was uncooperative and had tried to assault his arresting officers prior to hanging himself in his cell by a rope made from pieces of his shirt. The court held, however, that knowledge that the prisoner was acting violently or freakishly was not "synonymous with having reason to know that the violence might become self-directed." Id. In this case, by contrast, the officers faced an arrestee who appeared even less likely to commit suicide than the decedent in Camic. Far from being uncooperative or violent, Belcher was in good spirits, singing, clapping his hands and humming. Only an exercise in impermissible judicial hindsight could justify holding these officers responsible for the subsequent suicide.
 
 
 11
 At least five other circuits support this view. See Williams v. Borough of West Chester, 891 F.2d 458, 465-66 (3d Cir.1989) (jail officials who had no knowledge of detainee's suicidal tendencies not liable when they failed to remove his belt and he subsequently hanged himself with it); Danese, 875 F.2d at 1243-44 (officials entitled to qualified immunity where no knowledge that intoxicated detainee was seriously contemplating suicide); Edwards v. Gilbert, 867 F.2d 1271, 1274-76 (11th Cir.1989) (officers entitled to qualified immunity for failure to prevent suicide of prisoner where no suicide had been threatened or attempted); Estate of Cartwright v. City of Concord, 856 F.2d 1437, 1438 (9th Cir.1988) (city officials not liable for suicide of pretrial detainee where they had no reason to believe he was suicidal); Gagne v. City of Galveston, 805 F.2d 558, 559-60 (5th Cir.1986) (officers entitled to qualified immunity for suicide of arrestee where they failed to "uncover" his suicidal tendencies).
 
 
 12
 Finally, we note that the officers' conduct toward Belcher could in no way be construed as deliberate indifference. Far from being indifferent, the officers took immediate action to ensure Belcher's speedy release. Officer Lowe telephoned Belcher's daughter to inform her of her father's incarceration and afford her the opportunity to post bond. Lowe then gave Belcher a cup of coffee and told him that his daughter had been telephoned and was arranging to transport him home. Any failure to afford Belcher medical care was inadvertent rather than willful. Such behavior manifests no intent to punish, Bell, 441 U.S. at 538-39, 99 S.Ct. at 1873-74, and cannot be construed as "deliberately indifferent" or "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-06, 97 S.Ct. at 291-92.
 
 B.
 
 13
 The actions of officers Lowe and Carnegie in failing to remove decedent's belt and shoelaces also do not reach the level of "deliberate indifference." At most the conduct amounted to negligence--a showing which is insufficient under Estelle. It is true that the police chief of Clendenin had directed his officers to remove shoelaces and belts from prisoners to prevent self-inflicted harm, and officers Lowe and Carnegie testified that it was their usual practice to do so. However, a failure to carry out established procedures, without more, does not constitute "deliberate disregard for the possibility" that Belcher "would take his own life." Camic, 712 F.2d at 1146. See Williams, 891 F.2d at 466. See also Christian v. Owens, 461 F.Supp. 72, 77 (W.D.Va.1978) (no Eighth Amendment violation where officer allegedly failed to search a prisoner who committed suicide with a weapon hidden in his boot). Here, as in Camic, defendants had no reason to suspect that the prisoner was a suicide risk. Their failure to follow procedures established for the general protection and welfare of inmates does not constitute deliberate disregard for the medical needs of a particular intoxicated individual. Cf. Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").
 
 III.
 
 14
 Plaintiff's theory of this case would result in an absolute right to be protected from committing suicide or from other sorts of harm while incarcerated, regardless of whether the officers had reason to know that such harm was likely to occur. The Eighth and Fourteenth Amendments do not contemplate liability upon the premise that all self-inflicted harm is someone else's fault. See Camic, 712 F.2d at 1145-46; Christian, 461 F.Supp. at 77. That arguably negligent actions do not support a claim for cruel and unusual punishment is consistent with the purpose of the Eighth Amendment--to prohibit inhumane methods of punishment and assure appropriate standards of decency in a setting of detention. Estelle, 429 U.S. at 102-04, 97 S.Ct. at 290-91. We do not for one moment dismiss the pain of these events for those involved. We hold only that their tragic character cannot be ameliorated by efforts to affix constitutional blame where it does not belong.
 
 IV.
 
 15
 The individual officers are thus entitled to qualified immunity on the above claims. The claims against Mayor Oliver and Chief of Police Clendenin are even more attenuated than those against the individual police officers; they too must be dismissed. Because it is clear that there was no constitutional violation we need not reach the question of whether a municipal policy was responsible for the officers' actions. City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam); Giancola v. State of W. Va. Dept. of Pub. Safety, 830 F.2d 547, 550 (4th Cir.1987). Plaintiff's effort to turn this lawsuit into one for inadequate training of personnel or conditions at the jail is unavailing where there has been no underlying constitutional infraction. See generally City of Canton v. Harris, --- U.S. ----, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The judgment of the district court denying defendants' motion for summary judgment is reversed and the case is remanded with directions to dismiss these claims against all defendants.
 
 
 16
 REVERSED.