## CIRCUIT COURT OF THE CITY OF RICHMOND

Gloria McDaniels,
administratrix of
the estate of
Craig Masters

v.

Andrew Winston et al.

May 13, 1993

Case No. LU-4051–3

BY JUDGE T. J. MARKOW

This case came before the court for argument on demurrer on April 28, 1993. The facts alleged in the motion for judgment are the following. Craig Masters was arrested for simple assault on November 4, 1990. He was first transported to the city lockup and then taken to the Richmond City Jail, where he was placed in medical isolation. Masters was intoxicated at the time of his arrest and confinement. About one and a half hours after his arrest, Masters hanged himself using his shoe laces. He was pronounced dead at the Medical College of Virginia.

Gloria McDaniels, the administrator of Masters' estate, instituted this action against Sheriff Winston and a number of officers at the city jail, claiming their actions in failing to prevent Masters' suicide constituted a violation of his rights under the 5th and 14th Amendments to the United States Constitution and under 42 U.S.C. § 1983. The estate claims deficiencies in the handling of Masters' particular situation and also in the overall training and procedures used by the jail for suicide prevention.

The court has found no authority from a Virginia state court confronting this issue. However, two federal cases from the Fourth Circuit address the question of prisoner suicide and provide a helpful standard for the case at bar.

*Gordon v. Kidd*, 971 F.2d 1087 (4th Cir. 1992), involved the suicide of a man with a history of depression, mental illness, and alcohol abuse. Clarence Gordon's wife found him drunk in their kitchen with a steak knife pressed against his chest. She called 911 and told the dispatcher that her husband was threatening to kill himself. Police officers arrived, and at one point Gordon advanced toward them with a knife. The officers placed him under arrest and brought him to jail, informing the booking officer that Gordon had threatened to kill himself. When that officer passed custody of Gordon onto the assistant supervisor of the jail, he gave the supervisor Gordon's belt, and informed him that Gordon had threatened suicide. The assistant supervisor failed to pass that information on to anyone until after Gordon had killed himself.

In finding that all but the assistant supervisor were entitled to summary judgment, the court articulated the standard that "[p]rison officials violate the civil rights of inmates when they display 'deliberate indifference to serious medical needs'." *Id.* at 1094 (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). The court recognized that the duty to protect from self-injury arises when "the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies." *Id.* (quoting *Elliot v. Cheshire County*, 940 F.2d 7, 10–11 (1st Cir. 1991) (citation omitted)). The court helped clarify the "know or should have known" standard when it stated, "[i]n the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation . . . that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." *Id.* (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989)). Finally, the court noted that "prison officials need not screen a pretrial detainee for suicidal tendencies if they have no knowledge that the prisoner is suicidal . . . . It is well settled that officers are entitled to qualified immunity if they had no reason to suspect that the prisoner was a suicide risk." *Id.* (citations omitted).

Applying the foregoing principles to the instant case, the question becomes whether the jail officials had reason to know that Masters was a suicide risk. Although plaintiff pleads such knowledge, the court must examine its factual basis to determine if it is legally sufficient. Plaintiff imputes knowledge of the risk of suicide based on Masters' intoxication and past treatment for mental and emotional problems. This background is similar to that of the decedent in *Gordon v. Kidd*;

however, in that case Gordon explicitly threatened suicide, so the sufficiency of the other facts alone was not tested. In *Belcher v. Oliver*, 898 F.2d 32 (4th Cir. 1990), the court considered the suicide of an intoxicated detainee who did not make an actual suicide threat. The court found that:

> [t]he officers' failure to afford Belcher medical screening or attention did not violate constitutional standards. The general right of pretrial detainees to receive basic medical care does not place upon jail officials the responsibility to screen every detainee for suicidal tendencies . . . . There can be no claim against the officers for inadequate medical care when there exists *no objective evidence that Belcher even had a serious need for such attention.*

*Id.* at 34–35 (citations omitted) (emphasis added).

The objective evidence argued by plaintiff in this case is Masters' intoxication and prior mental problems. As to intoxication alone as an indicator of suicide, the *Belcher* court found it to be insufficient. "The officers had no absolute duty to protect Belcher from harming himself merely because he was intoxicated, where they had no reason to believe that his intoxicated state would lead to harm that was self-inflicted." *Id.* at 35. Plaintiff herein has pleaded no statements or other conduct by Masters which would have lead the officers to believe that he would harm himself. Just as in *Belcher*, at no point during his confinement did the decedent "express any concern about his well-being or behave in a way that would have indicated to the officers that he posed a risk of suicide or that they should take any additional action." *Id.* (citation omitted). As to Masters' prior treatment for mental and emotional problems, plaintiff has not pleaded facts regarding those problems which should have alerted the officers to the potential for suicide. The mere fact that an individual has been treated, at some unspecified time in the past, for problems which were mental and emotional in nature, does not make him a suicide risk. There are an immeasurable number of mental problems which do not render the patient in danger of suicide. Even strange behavior in the presence of the prison officials may not be enough to put them on notice of the potential for suicide, because "knowledge that the prisoner was acting violently or freakishly [is] not 'synonymous with having reason to know that the violence might become self-directed'." *Id.* (citation

omitted). As the *Belcher* court aptly summed up the unfortunate facts, "[o]nly an exercise in impermissible judicial hindsight could justify holding these officers responsible for the subsequent suicide." *Id.*

Counsel for the plaintiff urged the court to review the case of *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991), which upheld a jury verdict for the administratrix of the estate of a prisoner who had committed suicide. The claim in that case was of inadequate training and/or policies for prevention of suicide among the "class" of "intoxicated and potentially suicidal" detainees. The court relied heavily upon statistics as to the number of jail suicides, and of that number, how many had been intoxicated. The court seemed to disregard the statistic from the other perspective, that is, of the total number of intoxicated detainees, how few actually committed suicide. Regardless, the Third Circuit's decision, unlike the case at bar, did not turn on the issue of knowledge, or the sufficiency of facts which could impute knowledge. In fact, in *Simmons*, the court found that the City had not argued in its motion for judgment non obstante veredicto or on appeal that plaintiff had failed to prove the scienter element of the case. Thus, said the court, the argument had been waived, and the knowledge element would be assumed for purposes of its decision. This is completely unlike the case at bar, in which the issue of knowledge is at the heart of the case. As a final word on *Simmons*, the court notes its agreement with the dissenting opinion, which states the following:

> This Court in *Colburn v. Upper Darby Township*, ("Colburn II"), 946 F.2d 1017, 1024 (3d Cir. 1991), observed that "several of our sister circuits have recently pointed out the requirement of 'reckless or deliberate indifference' implies that there must be 'a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur'." *See also Torraco v. Maloney*, 923 F.2d 231, 236 (1st Cir. 1991). The suicide frequency for intoxicated detainees of .00015 fails to establish that as a "class" these detainees presented such a "strong likelihood" of committing suicide that the City was indifferent in not taking additional precautions. *Cf. Colburn II*, at 1026 (the Court was unwilling on the record in that case to equate intoxication with a "particular vulnerability to suicide"); *Belcher v. Oliver*, 898 F.2d 32, 35 (4th Cir. 1990).

*Simmons*, 947 F.2d at 1094 (Weis, J., dissenting).

The facts of this case are unquestionably tragic and disturbing to the court. However, in the absence of facts which would have led a reasonable officer to recognize Masters as a suicide threat, the court finds under the facts as pleaded that the defendants were not responsible for Masters' suicide as a matter of law. While the implication for the plaintiff is unfortunate, the simple fact is that all self-inflicted harm is not necessarily someone else's fault. *Belcher*, 898 F.2d at 36.

In light of this finding, the claims for inadequate training and/or policies also may not stand. Where the court has found no underlying constitutional violation in the actions of the prison officials, the court "need not reach the question of whether a municipal policy was responsible for the officers' actions." *Id.* (citations omitted). If the particular action (or inaction) cannot trigger liability, then *a fortiori*, neither can the policy pursuant to which the action was taken.

Therefore, the demurrer will be sustained.