**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEONARD EDMUNDSON, Administrator
of the Estate of James Richard
Turnage, Deceased; ALENE ROUSE
YELVERTON; ROBERT YELVERTON;
CRAIG YELVERTON; KAREN BENNETT;
KATHY EDMUNDSON; LIBBY PEELE;
ERIN JANNELL SHIRLEY, a minor, by
and through her guardian, Janice
Stocks; JANICE STOCKS, as Guardian
ad Litem for the above,
<u>Plaintiffs-Appellees,</u>

v.

GRAYHAM KEESLER, individually and
in his official capacity as an officer
of the City of Goldsboro Police
Department; DANIEL PETERS,

individually and in his official
capacity as an officer of the City of
Goldsboro Police Department; JAMES
P. MORGAN, individually and in his
official capacity as Police Chief of
the City of Goldsboro Police
Department; CHESTER HILL,
individually and in his official
capacity as the Police Chief for the
City of Goldsboro Police
Department,
<u>Defendants-Appellants,</u>

and

THE CITY OF GOLDSBORO POLICE
DEPARTMENT; CITY OF GOLDSBORO,
<u>Defendants.</u>

No. 95-3125

LEONARD EDMUNDSON, Administrator
of the Estate of James Richard
Turnage, Deceased; ALENE ROUSE
YELVERTON; ROBERT YELVERTON;
CRAIG YELVERTON; KAREN BENNETT;
KATHY EDMUNDSON; LIBBY PEELE;
ERIN JANNELL SHIRLEY, a minor, by
and through her guardian, Janice
Stocks; JANICE STOCKS, as Guardian
ad Litem for the above,
Plaintiffs-Appellees,

v.

CITY OF GOLDSBORO,
Defendant-Appellant,

and

No. 95-3132

GRAYHAM KEESLER, individually and
in his official capacity as an officer
of the City of Goldsboro Police
Department; DANIEL PETERS,
individually and in his official
capacity as an officer of the City of
Goldsboro Police Department; JAMES
P. MORGAN, individually and in his
official capacity as Police Chief of
the City of Goldsboro Police
Department; CHESTER HILL,
individually and in his official
capacity as the Police Chief for the
City of Goldsboro Police
Department; THE CITY OF GOLDSBORO
POLICE DEPARTMENT,
Defendants.

2

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CA-94-467-5-BO(3))

Argued: September 26, 1996

Decided: November 27, 1996

Before HALL, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Vacated and remanded with instructions by unpublished opinion.
Judge Hamilton wrote the majority opinion, in which Judge Niemeyer
joined. Judge Hall wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Kenneth Ray Wooten, WARD & SMITH, P.A., New
Bern, North Carolina, for Appellants. Zebulon Dyer Anderson,
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL &
JERNIGAN, L.L.P., Raleigh, North Carolina, for Appellees. **ON
BRIEF:** John R. Green, WARD & SMITH, P.A., New Bern, North
Carolina, for Appellants. James K. Dorsett, III, Steven M. Sartorio,
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL &
JERNIGAN, L.L.P., Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

HAMILTON, Circuit Judge:

Pursuant to 42 U.S.C. § 1983, the plaintiff/appellee, Leonard Edmundson, administrator of the estate of James Richard Turnage, sued the defendants/appellants, Officers Grayham Keesler and Daniel Peters, alleging that Keesler and Peters deprived Turnage of his rights guaranteed by the Fourth and Fourteenth Amendments when Turnage was shot while attempting to flee. The plaintiff also alleged that the defendants/appellants, Chester Hill, Chief of Police of the Goldsboro Police Department, and James Morgan, former Chief of Police of the Goldsboro Police Department, were liable for the shooting of Turnage under a theory of supervisory liability, and that the defendant/appellant, the City of Goldsboro, North Carolina, was independently liable for providing its officers inadequate training. See 42 U.S.C. § 1983.**1** The defendants appeal the district court's denial of their motion for summary judgment on the plaintiff's § 1983 claims. For reasons that follow, we vacate the district court's order denying the defendants' motion for summary judgment on the plaintiff's § 1983 claims and remand with instructions to enter judgment in favor of the defendants on these claims. Because all of the federal claims are without merit, we instruct the district court on remand to dismiss without prejudice the remaining state-law claims.

I

The evidence submitted by the defendants in support of their motion for summary judgment revealed the following. According to Keesler and Peters, on July 2, 1992, they went to the Franklin Baking Company in Goldsboro, North Carolina, to arrest James Richard Turnage, a Franklin Baking Company employee, for felony possession with intent to distribute and distribution of marijuana. When the officers presented Turnage with the arrest warrant, Turnage asked if he could finish unloading his delivery truck. The officers acquiesced.

_____

**1** In addition to the constitutional claims, several state law claims were raised by the estate and members of Turnage's family, none of which are before the court.

4

While Turnage was unloading his truck, he ran from the bakery warehouse to his personal pickup truck, which was located in the gravel parking lot adjacent to the warehouse. A fence surrounded the parking lot, with one gate providing the only means of exiting the lot.

Seeing Turnage run for his truck, Keesler and Peters ran after him, calling for him to stop. Refusing to heed the officers' command, Turnage got into his truck, locked the doors, and started the engine. Turnage then backed up his truck in a semi-circular manner so that the front of his truck was facing the gate exiting the parking lot. When the truck stopped, Keesler was positioned in front of the truck, toward the passenger's side, and Peters was positioned near the driver's side door.

As Turnage accelerated quickly forward and slightly to the right, toward the exit, the truck struck Keesler but did not knock him down. At this point, Keesler stood with his chest and left hand on the hood and with his gun pointed at Turnage. To avoid being run over by the truck, Keesler continued to back up as the truck accelerated forward. When Keesler perceived that "Turnage was not going to stop, but that he was going to continue accelerating into [him]," (J.A. 182), Keesler fired one shot through the windshield. Believing that Keesler's life was in danger, Peters fired two shots through the driver's side window.

After the shots, the truck proceeded through the gate, into the street, and stopped after it hit a pole. As a result of the injuries he received from the shots, Turnage died.

The defendants also submitted the affidavits of two witnesses to the shooting who confirmed the officers' account. One witness, E.T. Franklin Sr., observed Keesler in front of Turnage's truck and firing only after Turnage drove toward Keesler. Franklin also observed Peters on the driver's side of the truck and firing his shots after Keesler's. Another witness, Jimmy Stewart, observed Keesler in front of Turnage's truck with his left hand on the hood as Turnage drove forward toward Keesler. Stewart also averred that Keesler fired his weapon as the truck moved toward Keesler.

The defendants also submitted the affidavits of two experts who examined and evaluated the physical evidence. Their examination and

5

evaluation of the physical evidence also confirmed the officers' account. Tire impressions on the gravel parking lot revealed that the truck accelerated quickly backward and then accelerated forward. Ballistic reports revealed that one bullet was fired from Keesler's weapon, and two from Peters' weapon. The physical evidence showed that the path of one bullet was from a position in front of and slightly to the left of the truck's front center. The physical evidence also showed that one bullet came from a position slightly in front of the driver's side door and another from a position beside the driver's side door. Finally, Keesler's left palm print was found on the passenger side of the hood of the truck.

In response to the defendants' motion for summary judgment, the plaintiff submitted affidavits from two of Turnage's supervisors, Lionel Ginn and William Tyson. According to Ginn, as Turnage's truck moved backwards in a semi-circular direction, Keesler followed the truck, placing him in a position two to three feet from the front corner on the driver's side of the truck. As the truck moved forward and to the right toward the exit, Keesler fired his weapon at Turnage and then ran beside the truck shooting again twice into the driver's side. According to Tyson, as Turnage's truck moved forward and to the right toward the exit, Keesler "pushed off the truck and moved over to the driver's side of the truck out of the path of the truck." (J.A. 313). Keesler then fired into the truck through the driver's side window. According to Ginn and Tyson, Peters was neither behind the truck nor in their field of vision. As the truck left the lot, Ginn and Tyson saw Peters near the front gate of the parking lot.

The district court denied the defendants' motion for summary judgment based on qualified immunity, concluding that the affidavits of the plaintiff's two eyewitnesses created "a genuine issue of material fact critical to the legal determination of whether reasonable officers would have known that their actions were unconstitutional." (J.A. 324). The defendants appeal.**2**

_____
**2** Because this interlocutory appeal concerns the issue of whether, based on the facts viewed in a light most favorable to the plaintiff, the officers' conduct violated clearly established law, we have jurisdiction. See Behrens v. Pelletier, 116 S. Ct. 834 (1996); Johnson v. Jones, 115 S. Ct. 2151 (1995).

II

We first address the defendants' contention that Keesler and Peters were entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are immune from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Consequently, qualified immunity attaches when the government actor's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A qualified immunity defense is established if: (1) the government actor's action did not violate clearly established law, or (2) it was objectively reasonable for the government actor to believe that his action did not violate such law. See Anderson , 483 U.S. at 641; Harlow, 457 U.S. at 818-19.

It is clearly established that under the Fourth Amendment individuals have the right to be free of excessive force and that there are constitutional limitations on the use of deadly force during the course of an arrest. See Graham v. Connor, 490 U.S. 386, 395-96 (1989). Thus, Keesler and Peters' entitlement to qualified immunity turns on an assessment of the objective reasonableness of their belief that their conduct did not violate Turnage's right to be free of excessive force.

In determining whether the force used to effect a seizure was reasonable, and, therefore, not excessive, we apply an objective reasonableness test that examines "the facts and circumstances of each particular case," including, among other factors,"whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. Malley v. Briggs, 475 U.S. 335, 341 (1986). The Supreme Court has made it clear that an officer's actions are not to be assessed with 20/20 hindsight. Graham, 490 U.S. at 396. Rather, "qualified immunity serves to protect police from liability and suit when they are

required to make on-the-spot judgments in tense circumstances." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995).

Here, the facts in a light most favorable to the plaintiff demonstrate that Keesler, while positioned within two or three feet of a rapidly moving truck, fired all three shots, and Peters was at no time in the vicinity of the truck. Even in this light, the officers were entitled to qualified immunity because at the moment when Keesler used deadly force against Turnage, it was objectively reasonable for Keesler to view the use of deadly force as not excessive when considering the extremely dangerous circumstances confronted by the officers--a rapidly moving truck driven by a fleeing felon and Keesler's close proximity to the truck. Indeed, in similar circumstances, we have upheld the use of deadly force.

For example, in Drewitt v. Pratt, after observing Drewitt driving recklessly, Officer Pratt ran toward the car with his gun drawn, ordering Drewitt to stop. 999 F.2d 774, 776 (4th Cir. 1993). Instead, Drewitt sped up, catching Pratt on the hood of the car. Id. At that point, Pratt fired. Id. We affirmed the district court's holding that Pratt's actions were objectively reasonable and, therefore, Pratt was entitled to qualified immunity. Id. at 780.

We reached a similar result in Pittman v. Nelms , 87 F.3d 116 (4th Cir. 1996). There, the plaintiff was a passenger in a vehicle driven by Timothy Hudson. Officers Nelms and Banks approached the vehicle and confronted Hudson. As Hudson attempted to drive away, Banks's arm became entangled inside the window of the vehicle. Banks was dragged twenty-five to thirty feet before his arm finally came free, and he was thrown aside. Id. at 118. Banks then rose and fired at the car. Nelms, who could see that Banks had not been run over and killed, also shot at the vehicle when it was approximately twenty-five feet away; the shot that Nelms fired struck Pittman. Id. at 120. We held that the force used by Officer Nelms was not excessive, and, therefore, Nelms properly was entitled to qualified immunity. Id.

This case is nearly indistinguishable from Drewitt and Pittman. Similar to Drewitt and Pittman, this case involved circumstances that were "tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 397. In addition, as in Drewitt and Pittman, an officer, here Keesler,

8

was in serious danger of injury--Keesler was within two to three feet of a rapidly moving truck. The law does not require that an officer be struck before he can discharge his weapon in an effort to protect himself from harm. Indeed, similar perceptions of danger have served as a basis for qualified immunity even where those perceptions were mistaken. See, e.g., Slattery v. Rizzo , 939 F.2d 213, 216 (4th Cir. 1991) (holding that officer's perception that suspect was reaching for gun reasonable when suspect was in fact holding only a bottle).

Under the circumstances confronted by Keesler, "an objectively reasonable officer certainly could have believed that his decision to fire was legally justified." Pittman, 87 F.3d at 120. Accordingly, Keesler was entitled to qualified immunity.

With regard to Peters, plaintiff's evidence places him at a distance from the events and suggests that he did not apply any force to Turnage. Because Keesler was entitled to qualified immunity, Peters, as a non-shooter, was as well. See Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996) ("In the absence of any underlying use of excessive force against Wilson, liability cannot be placed on either the non-shooting officers, a supervisor, or the City.").**3**

III

Our conclusion that the officers acted reasonably is dispositive of the § 1983 claims against Hill, Morgan, and the City of Goldsboro. In the absence of any constitutional violation by the officers, the claims against Hill, Morgan, and the City of Goldsboro fail. See id.; Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) (holding that a claim of inadequate training cannot be established under § 1983 absent a finding of a constitutional violation by the person being supervised), cert. denied, 502 U.S. 1095 (1992); see also Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990) ("Because . . . there was no constitutional violation we need not reach the question

_____

**3** We note that with respect to Peters, we would reach the same result even if he discharged his weapon, which is the case under the defendants' version of the facts. Under Drewitt and Pittman, in light of the dynamic circumstances confronted by the officers, Peters could have reasonably believed that Keesler was in imminent danger.

of whether a municipal policy was responsible for the officers' actions . . . . Plaintiff's effort to turn this lawsuit into one for inadequate training of personnel . . . is unavailing where there has been no underlying constitutional infraction.").

IV

For reasons stated herein, we vacate the district court's order denying the defendants' motion for summary judgment on the plaintiff's § 1983 claims and remand with instructions to enter judgment in favor of the defendants on these claims. On remand, we instruct the district court to dismiss the state-law claims without prejudice. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996) (directing dismissal without prejudice of state-law claims on remand after holding district court erred in failing to grant summary judgment to the defendant on the plaintiff's § 1983 claims on the basis of qualified immunity).

VACATED AND REMANDED WITH INSTRUCTIONS

HALL, Circuit Judge, dissenting:

"Interlocutory appeals . . . are the exception, not the rule." Johnson v. Jones, 115 S. Ct. 2151, 2154 (1995). I would dismiss this interlocutory appeal because I believe that the district court's order "determines only a question of `evidentiary sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial." Id. at 2156.

With regard to situations involving fleeing suspects, the law was clearly established in 1992 that the use of deadly force is only justified if the officers have "probable cause to believe that [the suspect] pose[d] a significant threat of death or serious injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985). I agree that the analysis of qualified immunity in excessive force cases requires an examination of the particular circumstances faced by the officers to determine whether it was objectively reasonable for the officers to act as they did. Anderson v. Creighton, 483 U.S. 635, 638 (1987). I dis-

agree with the majority's conclusion that the order involved in this interlocutory appeal turned on whether the plaintiff's version of the facts made out a violation of clearly established law. See ante at 6 n.2.

After a detailed examination of the evidence, the district court concluded that "the submission by plaintiffs of the affidavits of two eyewitnesses[1] is sufficient to create a genuine issue of material fact critical to the legal determination of whether reasonable officers would have known that their actions were unconstitutional." Edmundson v. Keesler, No. 5:94-CV-467-BO(3) at 8-9 (E.D.N.C. Nov. 6, 1995) (order). In other words, the district court felt that the picture painted by Ginn and Tyson was that Keesler ran alongside the truck as it was pulling away from him, and that a permissible inference from this picture was that the shots were fired solely to stop the fleeing Turnage. Under what I think we all agree was the established law, this is a picture of excessive force.

The majority reduces the picture drawn by the plaintiff to "extremely dangerous circumstances confronted by the officers--a rapidly moving truck driven by a fleeing felon and Keesler's close proximity to the truck." Ante at 8. The district court, however, felt that much of what actually happened was open to dispute, particularly whether the truck was coming toward Keesler or moving away from him and toward the parking lot exit when the shots were fired. Whether Keesler was actually in danger, whether he appeared to be in danger, whether he could reasonably have thought he was in danger, and whether he and his partner fired solely to stop the fleeing Turnage, are clearly material facts. Whether we believe the record supports or even dictates a finding in the officers' favor on the immu-

_____

[1] Affidavit of Lionel Ginn: "Officer Keesler was completely out of the way of the pickup truck as it moved forward and rightward toward the parking lot gate. As Mr. Turnage began to drive by Officer Keesler, Keesler then shot his gun toward Mr. Turnage. . . . When I saw him shoot his gun, Officer Keesler was not in danger of being hit by the truck. I could not believe what I was seeing."

Affidavit of William Scott Tyson: "Officer Keesler was not in danger of being struck by the truck and his life was not in danger at the time he shot Ricky Turnage, as the truck was moving away from him and toward the parking lot exit."

11

nity issue[2] is irrelevant to the inquiry under <u>Johnson v. Jones</u>; all that matters at this point is that the <u>district court</u> thought that these factual disputes were genuine.

I respectfully dissent.

_____

[2] **Pittman v. Nelms**, 87 F.3d 116 (4th Cir. 1996), which is relied upon by the majority, <u>see ante</u> at 8, and which involved facts very similar to those in our case, was an appeal from a final order.

12