**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLYDE A. ERVIN, JR.,
Plaintiff-Appellee,

v.

R. MICHAEL MANGUM, Sheriff of
Raleigh County, in his individual
capacity; J. R. LILLY, Jail

Administrator, Raleigh County Jail,
in his individual capacity; THOMAS
SCOTT, Correctional Officer, Raleigh
County Jail, in his individual
capacity,
Defendants-Appellants.

No. 93-7129

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CA-92-864-5)

Argued: June 9, 1995

Decided: October 27, 1997

Before ERVIN and WILKINS, Circuit Judges, and
JACKSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded for further proceed-
ings by unpublished opinion. Judge Ervin wrote the majority opinion,
in which Judge Jackson joined. Judge Wilkins wrote an opinion con-
curring in the judgment.

_____

**COUNSEL**

**ARGUED:** Jeffrey Kent Phillips, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellants. Ralph C. Young, HAMILTON, BURGESS, YOUNG, TISSUE & POLLARD, Oak Hill, West Virginia, for Appellee. **ON BRIEF:** Stephen P. McGowan, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellants. D. Clinton Gallaher, IV, Fayetteville, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Clyde Ervin, a former pretrial detainee at the Raleigh County Jail in West Virginia, brought this civil rights action under 42 U.S.C. § 1983 against Michael Mangum, the former county sheriff, J.R. Lilly, the jail administrator, and correctional officer Thomas Scott. While at the Raleigh County jail, Ervin was assaulted by a fellow inmate and sustained serious injuries to his eyes and face. Ervin claims that the defendants failed to take sufficient precautions to protect him from assault and failed to provide adequate medical care once he had been injured. The defendants moved for summary judgment based on qualified immunity on both the failure to protect and failure to provide medical assistance claims.

Although the district court failed to distinguish sufficiently between the two claims, we find that summary judgment should have been granted in favor of all three defendants on Ervin's failure to protect claim and in favor of defendants Mangum and Lilly as to Ervin's claim of failure to provide medical assistance. Defendants are entitled to immunity from these claims because they committed no violation of clearly established constitutional law. The district court correctly held, however, that Scott is not entitled to summary judgment based

2

on qualified immunity on the claim of failure to provide medical assistance. In light of our ruling today, we remand this matter to the district court for trial on the sole issue of whether Officer Scott was deliberately indifferent in failing to provide Ervin with adequate medical care.

I.

On September 10, 1990, Clyde Ervin was arrested on marijuana charges and brought to the Raleigh County Jail to await transfer to Bluefield, West Virginia for arraignment. Within fifteen minutes of being placed in the felony cellblock, Ervin went into the inmates' commons room to place a phone call to his girlfriend. While on the phone, Ervin was assaulted by a fellow inmate, Ed Jordan. The attack occurred without any provocation. The men did not know one another nor had they even exchanged words during the fifteen minutes that Ervin had been in the cellblock. Jordan was a large man, and the one punch that he landed resulted in severe facial injuries, including two fractures to Ervin's face and a fracture to one of his eye sockets. Both eyes began swelling immediately, and Ervin bled from his nose and eyes. Ervin's condition worsened over the next twelve hours.

Concerned that Ervin would cause problems, other inmates dragged him to his individual cell where Jordan told him that he would be killed if he told anyone who had punched him. Ervin did not alert jail officials to his condition, apparently out of fear of retaliation. No correctional officers approached Ervin to determine if he needed medical attention. Ervin's first contact with an officer at the jail occurred the following morning, September 11, 1990, when Officer Scott removed Ervin from the cell for transport to Bluefield. The parties dispute whether Officer Scott inquired about Ervin's injuries when Scott removed Ervin from the cell. While Ervin claims that Scott specifically asked him what had happened, Scott asserts that he did not converse with Ervin that morning.

Ervin was released from the Raleigh jail into the custody of a state trooper who transported him to Bluefield for arraignment. After he had been arraigned on the drug charge, Ervin went immediately to Raleigh General Hospital where he remained for seven days. During

3

that time, Ervin underwent reconstructive surgery and incurred nearly $16,000 in expenses.

Following his release from custody and subsequent medical treatment, Ervin filed this § 1983 claim in United States District Court for the Southern District of West Virginia against Mangum, Lilly, and Scott. In light of Ervin's status as a pretrial detainee, the district court appropriately evaluated the parties' cross-motions for summary judgment under the Due Process Clause of the Fourteenth Amendment. The district court rejected the defendants' argument that plaintiff failed to show the violation of any clearly established constitutional or statutory right and, in a brief order, denied both sides' summary judgment motions. This timely appeal followed.

II.

Federal courts of appeal are granted jurisdiction to hear "final decisions" of district courts pursuant to 28 U.S.C.§ 1291 (1994). The Supreme Court has held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable `final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

Interpreting Mitchell in Johnson v. Jones, 515 U.S. 304 (1995), the Court appeared to restrict the reach of interlocutory appellate jurisdiction in cases in which qualified immunity has been denied. The Johnson Court held that defendants could not immediately appeal a denial of summary judgment based on qualified immunity when that order "resolved a fact-related dispute about the pretrial record." Id. at 307. The Court limited appellate jurisdiction under the Mitchell decision to cases that address "the purely legal issue [of] what law was `clearly established.'" Id. at 313.

We held this appeal in abeyance pending our en banc decision in Winfield v. Bass, 106 F.3d 525 (4th Cir. 1997) (en banc), which required us to resolve questions left by the Court's decision in Johnson. In Winfield, the district court denied defendants' motion for summary judgment based on qualified immunity. The defendants immediately appealed, challenging both whether the evidence was

4

sufficient to support the factual allegations and whether "the undisputed facts disclose[d] that reasonable officers would have understood that their conduct violated [plaintiff]'s clearly established legal rights." Winfield, 106 F.3d at 530. This court rejected the first argument as a proper basis for jurisdiction and relied instead on the second. "[W]e possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." Id.

Like the district court in Winfield, the district court in this case has found that genuine issues of material fact are at issue -- most importantly, the interaction between the plaintiff and Officer Scott on the morning of September 11. The defendants-appellants are correct to concede that this Court would have no jurisdiction to decide that "the district court incorrectly interpreted the facts of this case." Appellants' Supp. Br. at 4. Rather, defendants argue that summary judgment was appropriate because no clearly established right of the plaintiff was violated. The district court's denial of defendants' motion for summary judgment indicates that, in the view of the district court, a reasonable trier of fact could find that the defendants violated a clearly established right of which a reasonable person would have known. See Winfield, 106 F.3d at 530. Our consideration of that ruling provides the jurisdictional basis for this appeal.

In reviewing the evidence as it relates to the motion for summary judgment, we consider all evidence in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). This is particularly important in this case because the parties dispute several critical facts. While Ervin claims that one eye was swollen completely shut, that the other eye was swollen nearly as badly as the other, and that he continued to bleed from his nose for over twelve hours, the defendants contend that Ervin's injuries were barely noticeable. Additionally, Ervin claims that he and Officer Scott engaged in conversation in close proximity to one another on the morning of September 11, 1990, and that Scott mentioned previous instances in which inmates had been attacked by their fellow inmates. Officer Scott denies any such conversation. For purposes of our review, we resolve each of these discrepancies in favor of Ervin.

5

III.

Qualified immunity protects government officials from suits for civil damages arising out of the exercise of their discretionary functions. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981). This immunity is available when the conduct of a government employee "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.

In Siegert v. Gulley, 500 U.S. 226 (1991), the Supreme Court held that an appellate court may appropriately look to the merits of a case in which qualified immunity has been denied to determine whether a plaintiff has stated a cognizable claim at all."A necessary concomitant to the determination of whether a constitutional right . . . is `clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Id. at 232. Using this Siegert framework, we address each of Ervin's claims in turn.

A.

The defendants contend that the district court erred in denying their motion for summary judgment on Ervin's claim of failure to protect. We agree that the defendants are entitled to qualified immunity on the failure to protect claim and reverse as to all three defendants.

Ervin's § 1983 claim for failure to protect is based on substantive due process under the Fourteenth Amendment. Because Ervin was a pretrial detainee and not a convicted prisoner at the time of the incident, this claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). The due process rights of a pretrial detainee are"at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). This means that "while the convicted prisoner is entitled to protection only against punishment that is `cruel and unusual,' the pretrial detainee . . . may not be subjected to any form of `punishment.'" Martin, 849 F.2d at 870.

6

As a practical matter, however, we do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim. Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992); Belcher v. Oliver, 898 F.2d 32, 33 (4th Cir. 1990). Despite the Supreme Court's suggestion that pretrial detainees may be afforded greater protection than convicted prisoners, the circuit courts have generally analyzed both situations under the same "deliberate indifference" standard. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc); Zarnes v. Rhodes, 64 F.3d 285, 290 (7th Cir. 1995); Hill, 979 F.2d at 991 n.* (citing cases); Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1992); Bass v. Jackson, 790 F.2d 260, 262-63 (2d Cir. 1986).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court defined "deliberate indifference" for prisoner litigation under the Eighth Amendment. The Court began by observing that a prison official's "deliberate indifference" to "a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. An Eighth Amendment claim must articulate both an objective and a subjective component. Id. at 834. To satisfy the objective component, the plaintiff must show that an injury is sufficiently serious. "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (quotation omitted). We believe that Ervin's injuries are sufficiently serious to satisfy the objective component.

The second component of an Eighth Amendment claim is subjective. It requires that the defendant have had a sufficiently culpable state of mind. Id. "In prison condition cases that state of mind is one of `deliberate indifference' to inmate health or safety." Id. (citation omitted). In Farmer, the Court held that a prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

The evidence presented by Ervin in this case cannot support a finding that any of the defendants had the required state of mind. Inmate Jordan had never threatened or assaulted any other inmates; in fact, he was in prison for having committed a non-violent offense. Addi-

7

tionally, Ervin had been in jail for a total of fifteen minutes before Jordan assaulted him. Neither Officer Scott nor other correctional officers had any basis for believing that Ervin was in any danger. For that matter, Ervin had no reason to believe that he would be assaulted when he went into the commons room to make a phone call. Jordan's violent actions were absolutely unanticipated, making it impossible for any of the defendants to have subjective knowledge of a risk of harm to Ervin.

Ervin focuses heavily on the fact that conditions at the Raleigh jail on September 10, 1990 were not in strict compliance with West Virginia regulations. First, Ervin points out that corrections officers were making rounds once an hour rather than every thirty minutes as is required by West Virginia regulations. This is of no consequence since Ervin was assaulted within the first fifteen minutes that he was incarcerated. Second, Ervin notes that twenty-three inmates were incarcerated in the felony cellblock--eight more than are allowed under state guidelines. But Ervin offers no evidence suggesting that the overcrowding contributed to Jordan's outburst. Based on our reading of the record, the assault was a completely random act that was just as likely to have occurred had there only been fifteen men in the cellblock. We find that the connection between the conditions at the jail and the attack on Ervin are far too attenuated to support the contention that the defendants were deliberately indifferent to Ervin's health or safety. See Best v. Essex County, 986 F.2d 54, 57 (3d Cir. 1993).

The sudden outburst by Jordan could not have been predicted; Ervin and Jordan had never interacted with one another prior to the assault, and the defendants' failure to meet prison regulations was not causally related to Ervin's injuries. Because the evidence in support of Ervin's claim for failure to protect cannot constitute the violation of a constitutional right, Siegert, 500 U.S. at 232, the defendants are entitled to qualified immunity on that claim.

B.

The "deliberate indifference" standard that governed our analysis of Ervin's failure to protect claim also operates as the controlling standard in Ervin's claim that the defendants failed to provide ade-

8

quate medical care. "Pretrial detainees . . . are entitled to medical attention, and prison officials violate detainee's right to due process when they are deliberately indifferent to serious medical needs." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (quoting Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir. 1992)); see also Martin, 849 F.2d at 871.

First, we address the failure to provide medical care as it relates to defendants Mangum and Lilly. Deliberate indifference requires the subjective knowledge of an excessive risk to inmate health. Farmer, 511 U.S. at 837. Mangum and Lilly must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also [have] draw[n] the inference." Id. But Mangum, the former sheriff, and Lilly, the jail administrator, had no personal interaction with Ervin and, given their positions, could not "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." Antonelli v. Sheahan, 81 F.3d 1422, 1428-29 (7th Cir. 1996).

Without actual knowledge of Ervin's injuries, Mangum and Lilly cannot be held liable for "deliberate indifference" to his need for medical care. There is absolutely no evidence that either Mangum or Lilly knew that Ervin had been attacked by a fellow inmate or that he had sustained any injuries for which he was in need of medical care. These facts cannot support the finding of a constitutional violation at all. See Siegert, 500 U.S. at 232. Therefore, the district court erred in denying Mangum and Lilly's motion for summary judgment based on qualified immunity.

Ervin's claim against Scott for failure to provide medical care, however, requires a separate analysis. Ervin alleges that on the morning of September 11 Officer Scott engaged in conversation with him at a distance of less than ten feet. A few hours later, Officer Scott processed Ervin out of the Raleigh County jail. Assuming these facts, Officer Scott was in a position to have actual knowledge of the seriousness of Ervin's condition and his need for immediate medical care. Officer Scott, unlike Mangum and Lilly, may have had the required state of mind under Farmer v. Brennan to be found deliberately indifferent to Ervin's need for medical care.

9

Scott argues, however, that Ervin's injuries were not sufficiently serious or obvious enough to support a finding of deliberate indifference. Were we not required to construe the facts in the light most favorable to Ervin, we would be more inclined to accept Scott's argument. The parties offer very different evaluations of Ervin's injuries, compare Appellee's Br. at 5 (the morning after he was punched in the face, "Ervin's right eye was swollen completely shut and his left eye was swollen to the point where he could see only from a small slit . . . [and] Ervin continued to bleed from the nose as he had through the night") with Appellant's Br. at 20 ("the visible injury to the appellee, if there was any objective sign of injury, was not severe enough to require immediate treatment"), but it is the account offered by Ervin that must be accepted as true for purposes of our review of defendants' summary judgment motion. Ervin claims that Officer Scott looked directly at him from only ten feet away on the morning of September 11, but did not acknowledge Ervin's condition. If Ervin's injuries were as bad and as obvious as he claims them to have been, we believe they should be considered "serious medical needs" to which jail officials cannot be deliberately indifferent.

As a final matter, we reject Officer Scott's suggestion that Ervin's failure to request medical attention should bar his ability to recover on a claim that he had been wrongfully deprived of medical care. Again, viewing the facts in the light most favorable to the non-movant, Ervin had a legitimate reason for not bringing his injuries to the attention of prison officials. According to Ervin, Jordan "told me he was going to kill me if I told anybody who done it." Because Ervin's first, brief interaction with Jordan resulted in two swollen eyes, a broken face, and a bloody nose, it was reasonable for Ervin to be concerned for his safety and not request immediate medical attention.

In order to be entitled to qualified immunity from suit for failure to provide medical care, Officer Scott must show, as a matter of law, that his actions could not have constituted "deliberate indifference" to Ervin's serious medical needs. We reject Scott's argument that it was not a violation of clearly established law to deny a pretrial detainee immediate medical care whose eyes were swollen shut, whose face was broken, and whose nose had bled all night and continued bleeding. The district court was therefore correct in denying Officer Scott

10

summary judgment on Ervin's claim of failure to provide medical care.

IV.

Having considered both of Ervin's constitutional claims with respect to each of the three defendants, we reach the following conclusions:

(1) Summary judgment is granted to all three defendants on Ervin's failure to protect claim.

(2) Summary judgment is also granted in favor of defendants Mangum and Lilly as to the claim for failure to provide medical care.

(3) Summary judgment is denied, and the case is remanded for trial, as to defendant Scott with respect to the claim for failure to provide medical care.

The judgment of the district court is accordingly

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED FOR FURTHER PROCEEDINGS.

WILKINS, Circuit Judge, concurring in judgment:

I agree with the result reached by the majority. I write separately to emphasize why this result is consistent with the decision of the Supreme Court in Johnson v. Jones, 515 U.S. 304 (1995), and our en banc decision in Winfield v. Bass, 106 F.3d 525 (4th Cir. 1997) (en banc).

Both Johnson and Winfield stressed that in reviewing an interlocutory appeal by a governmental official whose claim of entitlement to summary judgment on the basis of qualified immunity has been rejected, a court of appeals possesses jurisdiction only to the extent that the official maintains his conduct did not violate clearly established law. See Johnson, 515 U.S. at 313; Winfield, 106 F.3d at 528-30. We do not possess jurisdiction under 28 U.S.C.A.§ 1291 (West

11

1993) to the extent that the appealing official seeks to assert the insufficiency of the evidence to raise a genuine issue of material fact, and we may not undertake that review absent some independent jurisdictional basis. See Johnson, 515 U.S. at 318-20; Winfield, 106 F.3d at 529-30.

The majority acknowledges these holdings. See supra pp. 4-5. But, having done so, it immediately states that "[i]n reviewing the evidence as it relates to the motion for summary judgment, we consider all evidence in the light most favorable to the non-moving party," noting that "several critical facts" are disputed by the parties. Supra p. 5. The majority then undertakes a de novo evaluation of the evidentiary sufficiency of the material presented by Ervin, evaluating whether it is adequate to create a genuine issue of material fact to support his claim. The majority ultimately concludes that except for the claim of Officer Scott's deliberate indifference to a serious medical need, the evidence Ervin presented is insufficient to support his claims. See supra p. 7 (reasoning that "[t]he evidence presented by Ervin in this case cannot support a finding that any of the defendants had the required state of mind"--i.e., subjective knowledge of a substantial risk of harm); supra p. 9 (concluding that"[t]here is absolutely no evidence that either Mangum or Lilly knew that Ervin had been attacked by a fellow inmate or that he had sustained any injuries for which he was in need of medical care"). Because the majority fails to indicate that any independent justification is present for considering the sufficiency of the evidence, this analysis is in obvious tension with the holdings of Johnson and Winfield.

Nevertheless, Johnson and Winfield acknowledged that in order to conduct the legal analysis that is properly considered on interlocutory appeal from a denial of summary judgment on the basis of qualified immunity, a reviewing court must know the factual circumstances to which the legal standards are to be applied. See Johnson, 515 U.S. at 319; Winfield, 106 F.3d at 533. The question arises, then, how a reviewing court is to determine the factual basis to which it should look in resolving the legal question over which it possesses jurisdiction. The Johnson Court recognized that it will often be possible for an appellate court to utilize the facts that were assumed by the district court in denying the motion for summary judgment. See Johnson, 515 U.S. at 319. But, the Court also accepted that when the district court

12

fails to set forth the facts on which its decision was based, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Id. And, we have held:

> [W]hen a district court fails fully to set forth the facts supporting its legal conclusion that a government official is not entitled to qualified immunity, the court of appeals must review the materials submitted to the district court to determine what the record, viewed in the light most favorable to the nonmoving party, discloses in order to have a factual basis upon which to base its legal conclusion.

Winfield, 106 F.3d at 533.

Here, in ruling on the motion for summary judgment, the district court explained only:

> In support of [Ervin's] claim, he has submitted deposition testimony indicating that at least one of the prison officials was aware that the inmate who assaulted [Ervin] was violent and/or dangerous. (Plaintiff's Dep. p. 81). Also,[Ervin] alleges he sat in his cell all night long bleeding heavily from the injuries he sustained as a result of an assault by another inmate. (Plaintiff's Dep. 63).... Therefore, [Ervin] in this case has raised a genuine issue as to whether his Fourteenth Amendment rights were violated.

J.A. 127-28. Obviously, this ruling falls short of providing an adequate factual basis for us to conduct a review of the officials' entitlement to qualified immunity. The information set forth by the district court relating to Ervin's claim of deliberate indifference to an actual risk of harm does not indicate which of the defendants possessed knowledge of a risk or what risk was posed. Further, the factual information relating to Ervin's claim of deliberate indifference to a serious medical need fails to indicate that any of the defendants possessed knowledge of Ervin's medical condition. This lack of specificity in the ruling of the district court dictates that we must conduct a review of the record to determine what the evidence, viewed in the light most favorable to Ervin, discloses. See White ex rel. White v. Chambliss,

13

112 F.3d 731, 735 n.1 (4th Cir. 1997), petition for cert. filed, 66 U.S.L.W. 3129 (U.S. July 31, 1997) (No. 97-204). Hence, under these circumstances it is necessary to conduct the type of analysis undertaken by the majority, and I agree with its ultimate conclusion that, viewed in the light most favorable to Ervin, the undisputed facts demonstrate that the prison officials are entitled to qualified immunity on Ervin's claims of deliberate indifference to a substantial risk of harm and, except for Officer Scott, to a serious medical condition.

14